## Wood and others vs. Crocker.

The liability of a railroad company as a common carrier, for goods transported upon its road, continues not only until the goods are deposited in the depot or warehouse of the company at the place of destination, but until a reasonable opportunity has been afforded the owner or consignee to take them away. But the extent of such reasonable opportunity is not to be measured by any peculiar circumstances in the situation of such owner or consignee, rendering it necessary for his own convenience that he have a longer time for taking the goods away than would be required if he dwelt in the vicinity of the depot, and were prepared with the means and facilities for that purpose.

Goods for the plaintiffs, transported over the defendant's railroad, reached the station at the place of their destination near sundown, and were taken from the cars and placed in the warehouse of the company about dark on Saturday night, and a few minutes afterwards the warehouse was closed for the night. The warehouse was three quarters of a mile from plaintiffs' place of business. Their cartman had called for the goods on Saturday afternoon about three o'clock, and was told by the freight agent that he need not come again that day, as it would be late before the freight train would arrive. He was however informed about dusk that the goods had come, but made no effort to get them, as it was nearly time for the warehouse to close. Before Monday morning the goods were destroyed, together with the warehouse, without fault of the defendant. *Held,* that the defendant was liable for the goods as a common carrier.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought to recover the value of goods, belonging to the plaintiff, destroyed by fire in the warehouse of the La Crosse & Milwaukee Railroad Company, at Portage City in this state. The facts are stated in the second paragraph of the opinion of this court. The defendant, *Crocker,* was operating said road at the time when the damage to the plaintiff accrued, as a receiver appointed by the district court of the

United States for the district of Wisconsin. The action was commenced in the circuit court for Columbia county, but transferred for trial to that for Milwaukee county, where judgment was rendered for the plaintiffs, from which the defendant appealed.

*Finches, Lynde & Miller*, for appellant, to the point that a railroad company may assume the double character of carrier and warehouseman, cited *Illinois Central Railway Co. v. Alexander*, 20 Ill., 23; *Thomas v. B. & P. R. R. Co.*, 10 Met., 472; *Norway Plains Co. v. B. & M. R. R. Co.*, 1 Gray, 266. To the point that the liability of such company as a carrier ends when the goods are delivered at its depot, they cited Story on Bailments, § 448; 30 Pa. St., 253; 23 Vt., 212; 20 Ill., 407; 1 Gray, 274; *Garside v. Proprietors of Trent Mersey Navigation*, 4 Term, 581; *Scott v. Pettit*, 3 Bos. & Pul., 471; 2 Crompt. & J., 222. Notice to the owner of the arrival of the goods is not necessary to terminate this liability. 20 Ill., 407; Redfield on Railways, 251–2; 1 Gray 274–5. Nor does such liability continue until the owner has had a reasonable time to call and take the goods away. 1 Gray, 263. Counsel also cited *Sawyer v. Joslin*, 20 Vt., 172; *Richardson v. Goss*, 3 Bos. & Pul., 119; *Rowe v. Pickford*, 4 Eng. Com. Law, 27; 5 Term, 389; *Richards v. The M. S. & N. I. R. R. Co.*, 20 Ill., 404–7; *Matter of Webb*, 8 Taunt., 443; *Van Santvoord v. St. John*, 6 Hill, 157.

*G. C. Prentiss* and *S. U. Pinney*, for respondents, cited *Coggs v. Bernard*, 2 Ld. Raymond, 918; 2 Kent, 602, 815; Bateman's Com. Law, §749, b; Story on Bailments, 540–645; Edwards on Bailment, 515, 519, 521; Redfield on Railways, 250, 261; Parsons on Merc. Law, 207; *Ostrander v. Brown*, 15 Johns., 39; *Hemphill v. Chenie*, 6 Watts and S., 66; *Smith v. N. & L. R. R.*, 7 Fost., 86; *Mich. Cent. R. R. v. Ward*, 2 Mich., 538; *Ch. & R. I. R. R. v. Warren*, 16 Ill., 502; *Moses v. Boston & Maine R. R.*, 32 N. H., 523; *S. C.*, 4 Fost., 71; *Price v. Powell*, 3 Coms., 322; *Ladue v. Griffith*, 25 N. Y., 364; *Mar-*

*shall v. Express Co.*, 7 Wis., 1 ; *Bourne v. Gatliff*, 33 Eng. C. L., 364 ; 42 id., 335 ; 49 id., 849 ; *Hyde v. Nav. Co.*, 5 Term, 389, opinions of ASHHURST, BULLER and GROSE, Justices ; *Manuf. Co v. Bark Tangier*, 6 Am. Law Reg., 504, 508.

*By the Court,* COLE, J.   The main question arising upon this record is undoubtedly one of considerable practical importance, as well to railroad carriers as to all those transacting business with them in this state.   It is the question as to when the extraordinary liability of a common carrier ceases in respect to goods transported over their roads.   Of course, it is perfectly clear that a railroad company may assume the double character of carrier and warehouseman ; but when, as a matter of law, can it be said that the liability of the carrier ends and that of a warehouseman commences?   For the appellant it is claimed that when the goods are transported to the place of delivery on the road, and are unloaded from the cars, and placed in the depot, then the transit is ended, and the duty or liability of the carrier is discharged ; while on the other hand it is insisted, that the liability of the carrier continues not only until the goods are deposited in the depot or warehouse of the company, but until a reasonable opportunity is afforded the owner or consignee to take them into his possession.   Each of these positions is sustained by respectable authority.   The leading cases on each side are those of the *Norway Plains Company v. Boston & Maine R. R.*, 1 Gray, 263, and *Moses v. Boston & Maine R. R.*, 32 N. H., 523.   These decisions were given upon substantially the same state of facts, and are directly in conflict with each other.   As the question has never been decided by this court, we feel at liberty, in this condition of the authorities, to adopt that rule which appears to be sustained by the sounder reason, and which is more in harmony with those wise maxims of public policy and convenience upon which the common law liability of the carrier is said to rest. We are therefore disposed to follow the case in New Hamp-

shire, as laying down the better rule, and to hold with that case that the liability of a railroad company as a common carrier, for goods transported over its road, continues until the goods are ready to be delivered at their place of destination on the road, and the owner or consignee has had a reasonable opportunity to take them away. And, to prevent all ground for misapprehension upon this point, we will further add, in the language of that case, that the extent of the reasonable opportunity afforded the owner is not to be measured by any peculiar circumstances in his own condition and situation, rendering it necessary, for his own convenience and accommodation, that he should have a longer time or better opportunity than if he resided in the vicinity of the depot and was prepared with the means and facilities for taking the goods away. This is fairly implied when it is said that the owner is entitled to only a reasonable opportunity to take his property from the possession of the company after the transit is terminated, and, if he does not do it at the earliest practicable moment, he may thereby be deemed to have consented that it should remain in possession of the company under the more limited liability of a warehouseman.

In this case, the evidence shows that the goods were transported over the La Crosse & Milwaukee railroad in January, 1863, and reached Portage City, the place of their destination, near sun down, and were taken from the cars and placed in the depot about dark on Saturday night. The depot or warehouse was closed for the night within a few minutes after the goods were put into it. The warehouse was three quarters of a mile from the respondent's place of business. Their cartman had been to the depot for the goods Saturday afternoon about three o'clock, and was told that they had not arrived. The cartman says that he was also told by the freight agent that he need not come again that day, as it would be late before the freight train would arrive. He was informed however, about dusk, that the goods had come, but made no effort to get them,

as it was nearly time for the warehouse to close. Before Monday morning, the goods, with the depot, were destroyed by fire, but under circumstances, it is contended, which would exonerate the company from liability if it was merely a depository or bailee for hire. But if it still stood in the relation of carrier, then it is conceded it is liable for the loss. That the company did stand in this relation to the property, and that the duty and obligation of a common carrier continued until the respondents had a reasonable time to obtain it, we think is clear.

It is objected that this rule is not sufficiently fixed, definite and certain to be practical, but that what is a "reasonable time" or "reasonable opportunity" will depend very much upon the circumstances of each case. This may be so, but we still think there will be no serious difficulty in the application of the rule to these business transactions. In cases of vessels engaged in foreign commerce, the question frequently arises, whether due and reasonable notice has been given to the consignee so as to afford him a fair opportunity to provide suitable means to remove the goods, or put them under proper care and custody. No serious difficulty is experienced in the application of this rule to commercial transportation and delivery. So in many other cases the question of liability resolves itself into one of diligence, as whether "due and proper care" has been exercised by a bailee; or whether a bill payable at sight or on demand has been presented within a "reasonable time;" or, in case of maratime insurance, whether the abandonment was made in a "reasonable time;" and in many other analogous cases which might be cited, where there is the same uncertainty in respect to the rule as in the case under consideration.

It is doubtless desirable to have all rules of law of a plain, precise and certain character; but this is not always attainable in human affairs. "The salutary and approved principles of the common law should not be sacrificed to considerations of

convenience and expediency ;" and that they would be by adopting the rule contended for by the appellant, we think is very clear from the reasoning in the New Hampshire case. Indeed, we are so well satisfied with that case, that we need only refer to it for a full expression of our views upon this subject. And in taking leave of that case, and in closing what we deem it necessary to say in respect to the one at bar, we wish to add our cordial approval of a weighty observation there made, that at a time when railroad corporations are almost monopolizing the transportation of property and persons by land, when their business transactions are increasing to such a wonderful extent, and commodities of immense values are daily necessarily entrusted to their charge and control, it would not seem to be the dictate of wisdom to relax the rules of strict responsibility which the common law attaches to carriers.

The judgment of the circuit court is affirmed.