IN THE

# SUPREME COURT

OF

# MINNESOTA.

————— ◆▸ —————

# JANUARY TERM, 1872.

————— ◆▸ —————

### LEVI DEROSIA

*vs.*

### THE WINONA AND ST. PETER RAILROAD CO.

If the consignee of goods by railway residing elsewhere than at or in the immediate vicinity of the place of their final destination has no known agent there, and his residence is unknown to the railway company, it can place the goods in its freight house, and after keeping them a reasonable time, if the consignee does not call for them, its liability as carrier ceases, and it remains liable simply as warehouseman.

Such reasonable time is not to be measured by any peculiar circumstances in the condition or situation of the consignee, which might render it necessary for his convenience or accommodation that he should have a

longer time, or better opportunity, than if he resided in the vicinity of the depot, and was prepared with the means and facilities for removing the goods. It is such time as would give a person residing in the vicinity of the place of delivery, and informed of the usual course of business on the part of the carrier, a suitable opportunity within usual business hours to come to the place of delivery, inspect the goods, and take them away.

Whether the question of reasonable time is one of fact for the jury, or law for the court, must depend upon the circumstances of each particular case.

If the court in the particular case can draw the conclusion, as to whether the time is reasonable or not, by the application of any legal rules or principles, the conclusion is a legal one. But if the circumstances be so numerous and complicated as to exclude the application of any general principle, or definite rule of law, it is necessarily one of mere fact to be reached by the jury.

Ordinarily it will be what is commonly called a question of mixed law and fact, to be decided by the jury under the instructions of the court as to the law.

Plaintiff sent goods over defendant's road to Waseca, consigned to himself at that place. The goods arrived at Waseca in the usual course of transit, part thereof on the 8th and the rest on the 10th of March, 1869, at 4:50 P. M., and were unloaded into defendant's freight depot and ready for delivery on the night of or next morning after their arrival respectively. Plaintiff first went to the depot for his goods on the 16th of said March. *Held*, that all of said goods had then been ready for delivery for more than the reasonable time for the plaintiff to remove them, within which the defendant's liability as carrier would continue.

Defendant's depot with the goods were destroyed by fire on the 17th March, 1869. Defendant gave evidence as to the custom of railroads in that part of the country as to keeping a night watch, and his duties; as to keeping a light burning in the office; and that defendant's depot building was constructed and arranged in accordance with the usual practice of such railroads. *Held*, that such evidence was not conclusive upon the question as to whether or not the defendant, whose practice was in accordance with the custom, had exercised ordinary care in the custody of such goods.

Defendant, as warehouseman was bound not only to keep such goods with ordinary care, but to deliver them on demand and payment of freight. It was bound to have an agent to see to such delivery and was responsible for his conduct. If by his negligence he prevented plaintiff

Derosia v. The Winona and St. Peter Railroad Co.

from getting his goods into his possession on the 16th, by means whereof they remained in the depot and were burned, the defendant is liable, though the fire were accidental.

Plaintiff went to the depot to get his goods before 4 o'clock P. M. of the 16th of March aforesaid, found them there, and the doors of the building open, but no person in or about the building. After waiting fifteen or twenty minutes, and no person appearing, he went away and did not return that day. *Held*, that if such absence of all persons from the warehouse was such as a warehouseman of ordinary care and prudence could properly permit, with reference to the reasonable accommodation and convenience of his customers under all the circumstances, it was not a want of the ordinary care and diligence which defendant was bound to exercise in respect of readiness to deliver goods on demand and payment of freight; otherwise it was a want of such ordinary care and diligence. If it was, and plaintiff would have taken away his goods if there had been any one at the depot to deliver them; if an ordinarily prudent man might reasonably conclude under the circumstances that to wait longer, or call again that afternoon within usual business hours would be useless to that end, he would be justified in doing neither, and it might properly be said that the negligence of the defendant had prevented him from getting his goods into his possession. By "usual business hours" those of the community generally are meant.

Plaintiff having testified that he went to the depot for his goods and found them there but did not get them, was asked: " Why did you not get them?" *Held*, not to be open to the objection that it did not call for facts, but for reasons or conclusions by way of argument that might have operated on witness' mind in changing or regulating his conduct.

This action was brought in the district court for Blue Earth county, to recover the value of certain goods, the property of the plaintiff, which were burned in the warehouse of the defendant. The case was tried by a jury, and a verdict rendered for the plantiff, upon which judgment was entered. The defendant appeals to this court. The grounds upon which the appeal is taken, being chiefly upon exceptions to the charge of the court and instructions to the jury which fully appear in the opinion, a further statement of the case is unnecessary.

Derosia v. The Winona and St. Peter Railroad Co.

Mitchell & Yale, for Appellant, cited the following. authorities: *Norway Plains Co. vs. B. & M. R. R.*, 1 *Gray*, 263; *Ill. Cent. R. R. Co. vs. Alexander*, 20 *Ills.* 23; *Porter vs. Chicago & R. I. R. R.*, 20 *Ills.* 407; *Richards vs. M. S. & N. I. R. R.*, 20 *Ills.* 404; *Davis vs. Same*, 20 *Ills.* 412; *Stone vs. Waite*, 31 *Maine*, 409; *Thomas vs. Boston & Prov. R. R.*, 10 *Met.* 472; *Moses vs. Boston & M. R. R.*, 32 *N. H.* 523; *Wood vs. Cocker*, 18 *Wis.* 345; *M. & E. R. R. vs. Ayres*, 29 *N. J.* 394; *F. & M. Bank vs. C. Trans. Co.*, 23 *Vt.* 211; *N. A. & S. R. Co. vs. Campbell*, 12 *Ind.* 55; *Wood vs. M. & St. P. R. R.*, *Wis.* (not yet reported); *Francis v. Dubuque & S. C. R. R. Co.*, 25 *Iowa*, 60; 2 *Redfield on Railways*, p. 52, 53; *Trow vs. Vt. C. R. R.*, 24 *Vt.* 493; *Haring vs. N. Y. & E. R. R.*, 13 *Barb.* 9; *Gahagan vs. Boston & L. R. R.*, 1 *Allen*, 187; *Roth vs. Buff. & State Line R. R.*, 34 *N. Y.* 553; *Story on Bailments*, Secs. 11 and 12; *Cass vs. Boston & Lowell R. R.*, 14 *Allen*, 449; *Shearman & R. on Negligence*, p. 5.

Brown & Wiswell, for Respondent, cited the following authorities: *Murphy vs. Jones*, 7 *Ind.* 529; *Bradburn vs. Burget*, 23 *Ind.* 468; *Jeffersonville R. R. Co. vs. Colton*, 29 *Ind.* 498; *Mayer vs. C. & N. W. R. R.*, 24 *Wis.* 566; 2 *Hilliard on Torts*, 554; *American vs. Baldwin*, 26 *Ills.* 504; *Wood vs. Crocker*, 18 *Wis.* 345; 2 *Redf. on Railways*, 54, 56 and 57; *Moses vs. Boston & M. R. R.*, 32 *N. H.* 523; *Mote vs. C. & N. W. R. R. Co.*, 27 *Iowa*, 22; *DuLaurans vs. First Div. St. P. & P. R. R.*, 15 *Minn.* 49; *Fannus vs. Champlain*, &c., 23 *Vt.* 186; *Kuby vs. City of St. Paul*, 8 *Minn.* 154; *Gilhosly vs. N. Y. Steam Nav. Co.*, 1 *Daly*, 197; *Green vs. Harris*, 1 *Hilton*, 254; *Cary vs. C. & T. R. R. Co.*, 29 *Barb.* 35; 2 *Hilliard on Torts*, 523; *Weide et al. vs. Davidson et al.*, 15 *Minn.* 327; *Conaway vs. Shelton*, 3 *Ind.* 334; *Reynolds vs. Cox*, 11 *Ind.* 262; *Ely vs. Tesch*, 17 *Wis.* 602; *Zonne vs. Wierson*, 3 *Chan.* 240; *Sanderson vs. Lace*, &c., 1 *Chan.* 231; *Trask vs. Panye*, 43 *Barb.* 569; *Lowell vs. Bost. & Low. R.*

Derosia v. The Winona and St. Peter Railroad Co.

R. Co., 23 Pick. 24; Thayer vs. City of Boston, 19 Pick. 511;
1 Redf. on Railways, 510; Abrams vs. Smith, 8 Blackf. 95;
Langsdale vs. Bonton, 12 Ind. 467; Rochester W. L. Co. vs. Rochester, 3 N. Y. 463; Swartz vs. Gilmore, 45 Ills. 455; Todd vs.
Cochell, 17 Cal. 97; Edwards on Bail. 44; Dimick et al. vs. M.
& St. P. R. R., 18 Wis. 471; Savage vs. Davis, 18 Wis. 699; 2
Redf. on Railways, 66; Edwards on Bail. 566; Alden vs. Pearson, 3 Gray, 342; Angell on Carriers, sec. 202; Shear. and
Redf. on Neg. sec. 12; Redf. on Carriers, sec. 38, note 11;
Swank vs. Nichols, 24 Ind. 199; Jeff. R. R. Co. vs. Swift, 26
Ind. 459; City of New York vs. Price, 5 Sand. 542; Shear. and
Redf. on Neg. sec. 10 and 13 a; Brehm vs. G. W. R. R. Co., 34
Barb. 256; McCahill vs. Kipp, 2 E. D. Smith, 413; Powell vs.
Deveney, 3 Cush. 300; Haney vs. Quick, 9 Ind. 258; 8 Ind. 339;
O'Herrine vs. State, 14 Ind. 420; Merryman vs. Ryan, 24 Ind. 261;
Hunter vs. Bales, 24 Ind. 299; In. R. R. Co. vs. Frisler, 30 Ind.
243; Manning et al. vs. Glendenning et al., 15 Wis. 50.

By the Court.—RIPLEY, CH. J.—On the morning of the 17th
March, 1869, the freight depot of the appellant at Waseca was,
with its contents, destroyed by fire.

This action is brought to recover for certain personal property of the plaintiff then in said depot and destroyed as
aforesaid. Part thereof had been received by defendant from
the Milwaukee & St. Paul Railroad at Owatonna, marked "L.
Derosia, Waseca," and shipped by defendant over its road
from Owatonna for Waseca on the 8th of said March. The
rest marked as above and received as aforesaid was shipped
by defendant over its road from Owatonna to Waseca aforesaid on the 10th of said March. Evidence was given which
proved, as is not disputed, that the property first above mentioned arrived at Waseca at about 4:50 P. M. on said 8th day of
March, and was unloaded from the cars into the freight depot

and ready for delivery that night, or the next morning, and that the rest arrived at Waseca at about 4:50 P. M. on said 10th day of March, and was unloaded from the cars and ready for delivery that night or the next morning. The plaintiff himself shipped the property for Waseca, the first lot from McFarland, Wisconsin, the second from Lime Springs, Iowa. The plaintiff resided in the town of Medo, in Blue Earth county. It is not claimed that he had an agent at Waseca, and the uncontradicted evidence is that his residence was not known to defendant. Being called as a witness in his own behalf he testified, that he saw the goods in question on the 16th of March, 1869, at the depot of defendant in Waseca.

He further testified as follows: "I went there to get the goods and bring them home. I went there before four o'clock in the afternoon. I went into depot and looked for the goods and found them there. Did not get them." The witness was then asked: "Why did you not get them?" This was objected to as immaterial, incompetent and inadmissible under the pleadings. The objection was overruled and defendant excepted. In support of this objection it is urged, that it did not call for any facts, but for reasons or conclusions by way of argument, that might have operated on the witness' mind in changing or regulating his conduct. But we do not think that it does necessarily. For instance, it would be an answer altogether responsive to such a question to state, if such had been the fact, that he did not get them because he had not the money to pay the freight, and the defendant refused to deliver the goods without payment thereof, which would be only stating facts, not mental conclusions.

The general rule as laid down by Greenleaf, and referred to by defendant (Vol. 1, § 434) is, that the witness is to be examined only as to matters of fact within his own knowledge, and that inferences or conclusions which may be drawn from facts

Derosia v. The Winona and St. Peter Railroad Co.

are ordinarily to be drawn by the jury alone. To such matters of fact the witness should in general be plainly, directly and distinctly interrogated. The question might, perhaps, be objectionable as not sufficiently conforming to this latter branch of the rule, but we do not think that the answer, viz.: "That he did not get them for the reason that there was no one there at the depot to let him have them," is objectionable, as not stating facts. It assigns a cause for the failure to get the goods, viz.: a certain state of facts. There is, therefore, no error here, materially affecting defendant's rights.

The jury were at the defendant's request instructed as follows, viz.: "That while said goods were in transit, the defendant would be liable as a common carrier, for any loss or injury to the property, not caused by the act of God, or the public enemy. But that after the goods had arrived at Waseca, and were deposited in defendant's warehouse or freight room, ready for delivery to the plaintiff, and a reasonble time thereafter for the removal thereof by the plaintiff had elapsed, the liability of the defendant as common carrier ceased, and it would be liable thereafter only as a warehouseman;" and the court so instructed the jury.

This practically adopts the rule laid down in *Moses vs. Boston & Maine R. R.*, 32 *N. H.* 523. We have found no case which states the law more favorably for the respondent.

The head note to *Buckley vs. Great Western R. R. Co.*, 18 *Michigan*, 121, is, that in the absence of any usage, special circumstances or agreement, the liability of railway companies for goods in warehouses awaiting delivery is that of common carriers. But the opinion of the court by no means comes up to the head note. We cannot discover that it goes any further than that the fact that the goods in question in the case had reached the defendant's warehouse, at their place of destination, and had been by the defendant deposited therein, did not change

its liability as carrier for that of warehouseman; whereas the head note is at least open to the construction, that the liability of carrier continues until delivery, without limitation as to time—a proposition to which we could not assent.

The New Hampshire doctrine is directly opposed to what may be called the Massachusetts rule, first laid down in *Norway Plains Co. vs. B. & M. R. R.*, 1 *Gray*, 263, viz.: that railway companies which transport goods over their roads for hire, and deposit them in their warehouses without additional charge until the consignee has a reasonable time to take them away, are not liable as common carriers for the loss of the goods by fire, without negligence or default on their part, after the goods are unladen from the cars and placed in the warehouse, but are liable as warehousemen only, for want of ordinary care, although the owner or consignee has no opportunity to take the goods away before the fire. So far as our observation goes, the New Hampshire decision has been approved in Vermont, Wisconsin, Kentucky and Alabama.

*Winslow vs. V. R. R. Co.* 42 *Vt.* 700; *Wood vs. Crocker*, 18 *Wis.* 345; *Jeffersonville R. R. vs. Cleaveland*, 2 *Burt*, 468; *Ala. & Tenn. R. R. vs. Kipp*, 35 *Ala.* 209.

Redfield also thinks that there is no very good reason why the carrier's responsibility should not continue until the owner or consignee, by the use of diligence might have removed the goods. 2 *Redf. 4th Ed. p.* 67, 8.

And a note to the last edition of *Angell on Carriers* states that the better view seems to be that there is no change in the nature of the liability of the carrier until the consignee has had reasonable opportunity to take the goods away. *Ch.* 8, *p.* 271, *note "a."*

A view of the law similar to that of the supreme court of Massachusetts has, however, been taken in Indiana, Iowa, New Jersey and North Carolina. *New Alb. & Salem R. R. vs. Camp-*

Derosia v. The Winona and St. Peter Railroad Co.

*bell*, 12 *Ind.* 55; *Morris & Essex R. R. vs. Ayres*, 5 *Dutcher*, 394; *Francis vs. Dubuque R. R.* 25 *Iowa*, 60; *Hilliard vs. Weldon R. R.*, 6 *Jones* (*N. C.*) 343.

In the latest case from Illinois that has come to our notice, the court say, that the rule, though not the best that might be adopted in the premises, is well settled in this state, that a railroad company, to discharge its liability as carrier on getting the goods to their place of destination, is not bound to deliver them to the consignee personally, or give notice of their arrival; and after storing them in a suitable place to await the demand of the consignee, the liability is only that of a warehouseman. *Chicago & H. R. R. Co. vs. Scott*, 42 *Ills.* 132.

In this conflict of authority, both parties agree that the railroad company is not obliged to give notice to the consignee of the arrival of the goods. From this, however, Prof. Parsons dissents, if the consignee's residence is known or can be found by any reasonable exertion. 2 *Parsons on Cont. B.* 3, *Ch.* 11, § 9.

In New York it has been recently held by the commissioners of appeals, that if the consignee lives at or in the immediate vicinity of the place of delivery, the carrier must notify him of the arrival of the goods; but if the consignee is absent, unknown, or cannot be found, the carrier may place the goods in its warehouse, and after keeping them a reasonable time, if the consignee does not call for them, its liability as a common carrier ceases. If after the arrival of the goods the consignee has a reasonable opportunity to remove them and does not do it, he cannot hold the carrier as an insurer. *Fenner vs. Buffalo and State Line R. R.*, 44 *N. Y.* 505.

For reasons hereafter stated, there must be a new trial in this case. It is necessary, therefore, that we should now state our conclusions as to the duty and liability of railway companies in respect of goods at their place of final destination,

where, as in the present case, the consignee residing elsewhere than at or in the immediate vicinity of such place of final destination, has no known agent there, and his residence is unknown to the carrier.

In such a case we are of the opinion that the carrier can place the goods in its freight house, and after keeping them a reasonable time, if the consignee does not call for them its liability as carrier ceases; and it remains liable simply as a warehouseman.

In this case, the defendant next asked the court to charge, " That what would be under the circumstances of the case such reasonable time for the removal of the goods, is not to be measured by any peculiar circumstances in the condition or situation of the consignee or plaintiff which might render it necessary for his convenience or accommodation, that he should have a longer time or better opportunity than if he resided in the vicinity of the depot, and was prepared with the means and facilities of removing them. But that what is meant by reasonable time, is such as would give a person residing in the vicinity of the place of delivery, and informed of the usual course of business on the part of the company, a suitable opportunity within the usual business hours, after the goods are ready for delivery to come to the place of delivery, inspect the goods and take them away;" which the court then and there refused to give, but in place thereof instructed the jury, " That the law has not fixed, and cannot fix any precise time, but that must be ascertained by the jury and fixed upon by them."

To this charge and refusal the defendant excepted. In thus charging, the court, in substance and effect, instructed the jury, that the question, as to what would be such reasonable time, was a pure question of fact for their sole decision as a matter falling within their peculiar province.

The position of this court upon such questions is, "That whether the question of reasonable time, etc., is one of fact for the jury, or of law for the court, must depend upon the circumstances of each particular case," (*Cochran vs. Toher*, 14 *Minn.* 385,) a position with which the instruction above quoted is entirely at variance.

The same case further states, that the test for deciding whether such general inference as to reasonable time, be one of law or fact, is this : " If the court in the particular case can draw the conclusion by the application of any legal rules or principles the conclusion is a legal one    *    *    *    . . But if, on the other hand, the circumstances be so numerous and complicated as to exclude the application of any general principle, or definite rule of law, the further inference is necessarily one of mere fact, to be made by the jury.  In other words, the rules of ordinary practice and convenience become the legal measure and standard of right."

It will not be contended that, tried by this test, the question of reasonable time was in the case at bar a pure question of fact for the jury.

But it is of course quite true, that, ordinarily, it will be what is commonly called a question of mixed law and fact, to be determined by the jury under the instructions of the court as to the law.  (*Roth vs. Buffalo & State Line Road*, 34 *N. Y.* 548.) And had the court been of opinion that there were facts to be ascertained bearing upon the question of reasonable time, it should have instructed the jury as to the rule of law to apply to the facts as they should find them.  *Purvis vs. Coleman*, 1 *Bosworth*, 321.

The plaintiff does not suggest, nor do we discover that any just exception can be taken to the instruction requested.  If the plaintiff was not entitled to notice of the arrival of the goods, he would certainly not be entitled to a longer time

after the goods were ready for delivery in which to come to the place of delivery, inspect the goods, and take them away, than one who was entitled to such notice would be. Moreover, he must exercise diligence on his part, (2 *Redf. supra*) and, therefore, it must be supposed that he will inform himself of the usual course of business on the company's part, as to the hours established for arrival of trains and unloading and delivering such goods. (32 *N. H.* 523, *p.* 541.)

Not being entitled to actual notice of the arrival, it would be negligence on his part not to do so ; for it must be supposed that he will exercise reasonable diligence, in all these particulars, to be at the place of delivery as soon as may be practicable after their arrival, and take them into his possession (32 *N. H. supra ;*) and it would not be contended that if the consignee is not able to take the goods, the carrier should continue to insure them till he becomes so.

We agree with the case above cited, that if the plaintiff's peculiar circumstances required a more extended opportunity than if he resided in the vicinity of the warehouse, and was provided with the means and facilities for taking the goods away, they must be considered, after such reasonable time as but for these peculiar circumstances would be deemed sufficient, to be kept by the company for his convenience and under the responsibility of warehouseman only.

The defendant then asked the court to instruct the jury :

" That in this case part of the goods having arrived at Waseca on the 8th, and the remainder on the 10th of March, and having remained in defendant's freight house ready for delivery from these dates until destroyed by fire' on the morning of the 17th of March, and not having been called for, therefore it is true as a proposition of law, that defendant's liability as a common carrier had terminated, and therefore at the time the goods were destroyed the liability of the de-

fendant was simply that of warehouseman ;" which request the court then and there refused, but in place thereof did charge the jury :

" That I would not give positive instruction that in law the defendant was liable only as warehouseman, but would leave the jury to determine that question under the instruction before given." To which refusal and charge, and each thereof, the defendant excepted.

The instruction asked is fairly open to the criticism of the plaintiff, viz.: that it passes upon and decides the effect of plaintiff's acts in going to the depot as above stated.

If he went there on the afternoon of the 16th for the purpose of getting his goods, and made reasonable search for the custodian thereof, it would not be a correct use of language, in its usual meaning, to say that the goods had not been " called for previous to their destruction on the 17th ;" what the facts were in this behalf was for the jury, not the court, to settle.

It was not error, therefore, to refuse to give the instruction as requested. But in the instruction actually given the court erred, as it had in its previous instruction. It left it to the jury to say, what on the 17th of March the liability of the defendant was, under the instruction already given, i. e., that from and after the expiration of a reasonable time for their removal after the goods arrived and were ready for delivery the defendant would be liable as warehouseman, but that what such reasonable time would be, was solely for the jury to determine, i. e., it was as above stated a pure question of fact.

The plaintiff does not question the correctness of the statement in the request as to the time of the arrival of the goods, and it is quite evident, as already remarked, that no question was made at the trial on that point. The goods were shipped at Owatonna, sixteen miles from Waseca, on the 8th and 10th, and the then station and freight agent of the defendant at

Waseca testified; that goods shipped from Owatonna for Waseca always arrived at Waseca the same day they were shipped, and about 4:50 P. M.; that he always checked off all the freight that arrived, immediately after its arrival, same day it arrived, and unloaded it from cars into the depot; if not all unloaded the same night it arrived, it was always unloaded the first thing next morning into freight room; freight was always ready for delivery either the same night it arrived or the next morning; freight shipped from Owatonna on the 8th of March, would be ready for delivery either the same night, or the morning of the 9th, and freight shipped on the 10th, would be ready for delivery either the same evening or the morning of the 11th.

This testimony, standing as it does uncontradicted, warrants us in saying, as above, that evidence was given which proved the arrival and readiness for delivery of the goods on the night of the 8th and 10th, or the next morning thereafter respectively. When, therefore, the plaintiff on the 16th first went to the depot for his goods, the first shipment had been ready for delivery at least seven days, and the second at least five days. This being so, there can be no question but that all of said goods had then been ready for delivery for more than the reasonable time for the plaintiff to remove them, within which the defendant's liability as carrier would continue.

" It is to be supposed," say the supreme court of New Hampshire, " that the consignee has been advised by the consignor of the fact that the goods have been forwarded, and that he has taken or is prepared to take proper measures to look for them on their arrival, and to remove them as soon as he can have reasonable opportunity to do so."

Here the plaintiff was his own consignor. As he was not entitled to notice, it was just that he should have time and opportunity to remove the goods by the exercise of the proper

watchfulness, before the responsibility of the carrier ceased. 2 *Redf. on Railways, supra.*

The plaintiff shipping the goods himself for Waseca, was bound, like any other consignee not entitled to actual notice, in the exercise of ordinary diligence, to inform himself of the ordinary course of transit on the roads between the places of shipment and Waseca.

It appears by the pleadings that these goods reached Owatonna in the ordinary course of transit. The reasonable expectation of the plaintiff, therefore, would have been that his goods would reach Waseca on or about the 8th and 10th respectively.

The question in this case is, then, whether, if the plaintiff had lived at Waseca, and been provided with the means and facilities of taking his goods away, five days would be a reasonable time after they were ready for delivery for him to do so. To hold otherwise, would be manifestly unreasonable.

The case of *Northrop v. Syracuse, etc., R. R.,* 5 *Abb.* (*N. S.*) 425, as it is stated by the court in giving its opinion in the case of *Fenner vs. Buffalo, etc., R. R., supra,* is in point. "In that case the defendant agreed to transport for the plaintiffs a certain quantity of wheat from Tully, in the county of Onondaga, to Chenango Forks, and did so transport the same. It was directed to plaintiffs at Chenango Forks, though they resided fifteen miles from there, at Chester Village, whither they intended to carry the wheat. No one being present for the plaintiffs to receive the wheat, on its arrival at Chenango Forks, it was deposited there in the freight house of the defendant, at 4 o'clock in the afternoon, August 8, 1859. The plaintiff, in the afternoon of the next day, received notice that the wheat had been sent from Tully to Chenango Forks, and the following night the wheat was consumed by fire; and on the 10th of August the plaintiffs sent for and

demanded the wheat. It was held that the defendant was not liable as a common carrier for the wheat and that the plaintiffs could not recover. The rule was laid down, in that case, that, when a railroad carrier safely transports goods to their place of destination, and, finding no one there to receive them, or to whom notice can be given of their arrival, places them in its freight house, and keeps them there uninjured a reasonable time, ready for delivery, it ceases to be liable as a common carrier; and that it is not necessary for the carrier to give notice of the arrival of the goods to a consignee, who, as in that case, did not reside at, or in the immediate vicinity of, the place to which the goods were consigned." *Fenner vs. Buffalo & St. Line R. R.*, *supra*.

In that case forty-eight hours had not elapsed after the goods were ready for delivery before they were destroyed.

Considering, as we think it must be considered in this case to have been taken as proved and not disputed, that the plaintiff's goods were ready for delivery as above stated, it would have been clearly within the province of the court to have instructed the jury that the reasonable time referred to had expired, and that defendant's liability as carrier had ceased before the plaintiff went for his goods. He should, in any event, in place of giving them the instruction he did, have told them that if they believed that the goods were so ready for delivery, they must find that such liability had ceased. The jury, thus left to decide, what, if not upon the evidence a pure question of law, was at any rate a mixed question of law and fact, without proper instructions as to the law, may have erred in passing upon what was not within their province thus to pass upon, and held that the liability of the defendant as carrier had not expired when the goods were burned.

The defendant then asked the court to instruct the jury: "That inasmuch as at the time the goods were destroyed, the

liability of defendant was only that of a warehouseman, therefore they would be responsible only for the exercise of reasonable and ordinary care in the custody of goods; and if they exercised ordinary care in the custody of the property, they are not liable for its loss. They would only be responsible for loss caused by their own negligence;" which request the court refused and the defendant excepted.

The court charged: " That he had already left it to the jury to ascertain whether a reasonable time had elapsed for the plaintiff to get his goods away. That if they found such reasonable time had elapsed, the defendant would be liable as warehouseman;" to which the defendant excepted.

This charge and refusal require no additional remarks.

The court then charged the jury : " That by ordinary care is meant that care which a person of common prudence takes of his own concerns, or that degree of care which men of common prudence exercise about their own affairs in the age and country in which they live; that in determining what would be ordinary care in a particular case, reference must be had to the actual state of society, the business habits, and general usages peculiar to the time and country. That what is done by men of ordinary prudence in any particular country in respect to things of a like nature, whether it be more or less, in point of diligence, than what is exacted in another country, becomes in fact the general measure of diligence. But the evidence of the custom of railroads given in this case is merely evidence to go to the jury for what it is worth. It is not conclusive." To this no exception was taken.

The defendant then asked the court to charge the jury : " That if defendant conducted itself in respect to the care and custody of the goods in question in the manner that men of ordinary prudence usually act with reference to things of a like nature, and exercised the degree of care which other per-

sons engaged in similar business in this part of the country are in the habit of bestowing upon property similarly situated, it would be deemed in law to have exercised 'ordinary care' and would not be liable;" which was refused, and defendant excepted. The first branch of the instruction is open to the objection, that the same thing, in substance, had just been stated by the court to the jury, and it could not be requested to repeat it. As to the last branch thereof, the only evidence in the case of the kind of care referred to, was that of the custom of railroads, of which the court had spoken. This evidence relates to the custom of railroads in this part of the country, as to keeping a night watch, and his duties, and as to keeping a light burning in the office, and that defendant's depot building was constructed and arranged in accordance with the usual practice of such railroads. The court had, therefore, charged the jury, in substance and effect, that the proof of the custom in these respects was to be weighed by the jury in considering whether or not the defendant had used ordinary care, and that they should give it such weight as they should consider it entitled to, but that it was not conclusive. The instruction asked was, it will be perceived, the opposite of this, and we think it was rightly refused.

The only case directly in point that has come under our observation, is the one cited by defendant, in which the court in speaking of the liability of a defendant as warehouseman say: "If the defendant exercised due and ordinary care in the custody of the property, (viz.: a tub of sugar which had been stolen from the defendant's freight depot,) they cannot be charged for its loss. What constituted such care was a question of fact to be judged with reference to all the circumstances, and especially with reference to the degree of care which other persons engaged in similar business in the country were in the habit of bestowing on property similarly situated. The

Derosia v. The Winona and St. Peter Railroad Co.

standard of ordinary care varies necessarily in different local-
ities; one degree of diligence would be required for the city,
and a less or greater for the country, depending on a great
variety of circumstances. The defendants offered to prove
that there was exercised by them in relation to this property
that care which other railroad companies in Boston usually
exercised in relation to such property. The court excluded
this evidence, and on this ground the exceptions were well
taken." *Cass vs. B. & L. R. R.*, 14 *Allen*, 448.

This is very far from holding that the evidence would be
conclusive proof of ordinary care in that case. That question
was to be judged of with reference to all the circumstances,
though especially with reference to the custom of the road.

Moreover, the instruction, if given, would have led the jury
to the conclusion that, in its own language, the defendant
" would not be liable" if the goods were kept in a depot so
built and arranged, and with such night watch and lights, as
was customary for railroads in this part of the country ; for,
as already suggested, they could but apply it to the evidence
in the case, and this was all there was as to the usage of per-
sons engaged in similar business. But the whole duty of
defendant towards plaintiff as warehouseman, would not be
included in the keeping of the goods with ordinary care. It
was bound to deliver them on demand and payment of freight.
It was bound to have an agent to see to such delivery and was
responsible for his conduct. If by his negligence he prevented
the plaintiff from getting his goods into his possession on the
16th, by means whereof they remained in the depot and were
burned, this was a direct consequence of such default, and the
defendant is liable for it. *Stevens vs. B. & M. R. R.*, 1 *Gray*,
277.

As the instruction asked might, therefore, have misled the

jury into a belief that the defendant was not liable, notwithstanding such a state of facts, it was properly refused.

In respect of readiness to deliver goods on demand and payment of freight, the defendant was bound to exercise ordinary care and diligence.

Supposing plaintiff's testimony to be true, if the absence of all persons from the warehouse, when, and as stated by him, was such as a warehouseman of ordinary care and prudence could permit with reference to the reasonable accommodation and convenience of his customers under all the circumstances, it was not a want of ordinary care and diligence, otherwise it was.

If it was, the majority of the court think that the next question is, Did such want of ordinary care and diligence prevent the plaintiff from getting his goods?

The case above cited, and the two which the plaintiff cites as in point, [*Jeffersonville R. R. v. Cotton*, 29 *Ind.* 498; *Meyer v. C. & W. R. R.*, 24 *Wis.* 566,] are cases in which it is very clear that the defendants' negligence prevented plaintiffs from getting their property; for the agent of plaintiffs [in the case from 1 *Gray*, for instance,] on calling for the goods was told that the goods were not there but had been delivered; whereupon he went away without the goods, and not being taken away that afternoon, they were burned in the night, with the warehouse.

The plaintiffs, in the case from 1 *Gray*, were as truly prevented from getting their goods as if the defendant had refused on demand to deliver them. Since the defendant's statement on the point was their sole reliance, they would be justified in not sending again for goods stated not to be in defendant's possession. Such action would appear to them to be useless, and such conclusion would be reasonable.

The other cases above referred to are similar.

Applying these principles to the case at bar, and assuming that the facts show the fire to have been accidental, and also that plaintiff would have taken away his goods if there had been any one at the depot to deliver them to him when he was there; and further. assuming that it was negligence in defendant not to have some one there to deliver; if an ordinarily prudent man might reasonably conclude, under the circumstances, that to wait longer, or call again that afternoon within usual business hours, would be useless to that end, he would be justified in doing neither, and it might properly be said that the negligence of the defendant had prevented him from getting the goods into his possession.

Whether such a conclusion in this case would be reasonable or not would be for the jury to decide, under proper instructions, upon all the facts and circumstances of the case bearing thereon.

The defendant asked the court, who refused to instruct the jury, "That there was no evidence tending to show that the loss of the goods was the result of negligence, or want of ordinary care, on the part of the defendant, and therefore the jury must find a verdict for the defendant."'

Even if it be assumed that the fire was accidental, it justifies the refusal to so instruct; that it cannot be said that there was no evidence tending to show that such a conclusion on plaintiff's part, as above mentioned, would have been a reasonable one.

It follows, however, from what has been said, that the charge which was given, was erroneous, viz.: "That if they believed that the plaintiff went to the depot on or about four o'clock in the afternoon or during proper business hours of the day preceding the fire, and found his goods there, the doors of the depot being open, and on examination found no person in the office or about there, and that he waited a reasonable time for

some one to appear there, and no one came, by which means he was induced to change a previously formed intention of getting his goods and returning to Wilton for that night, and was induced to put out his team and stay over night at Waseca, and his goods were burned on that night in the depot, the defendant is liable for the loss." Negligence of defendant which would induce plaintiff to change his intention of getting his goods and returning to Wilton that night, would not necessarily be negligence that would prevent plaintiff from taking the goods into his own possession during usual business hours of that day. Returning to Wilton or not, would be a matter of plaintiff's convenience. If he left his goods in the depot because he could not get them and get back to Wilton the same night, he left them there for his own convenience ; not because the defendant's negligence prevented him from taking them into his own possession.

The defendant's agent states that he "was always at the depot during business hours, which were from 7 A. M. to 9 P. M., except while at my meals. We deliver goods when called for any time till 9 o'clock at night."

By usual business hours, we do not mean the time during which the defendant required the station-agent's services, but those of the community generally. If the plaintiff knew that though those had elapsed he might still get his goods on application, his omission to avail himself of that opportunity would not relieve the defendant from liability.

The judgment appealed from is reversed and a new trial ordered.