THE L. L. & G. RAILROAD CO. v. W. H. H. MARIS.

16  333
40  185
16  333
55  530
16  333
67  846

1. COMMON CARRIER; *Extent of Liability, After Transit.* The extraordinary liability of a railroad company as carrier of goods extends, not merely to the termination of the actual transit of the goods to the place of destination, but also until the consignee has a reasonable time thereafter to inspect the goods and remove them in the usual hours of business, and in the ordinary course of business.

2. REASONABLE TIME — *What it is; Residence of Consignee.* This reasonable time is not a time varying with the distance, convenience, or necessities of the consignee, but is such time as would enable a person living in the vicinity of the place of delivery, in the usual course of business, and within the ordinary hours of business, to inspect the goods and take them away.

3. ———— Where goods are permitted by the consignee to remain eight days in the depot of the carrier, at the place of delivery, that is more than a reasonable time; and if the goods are then lost or destroyed without any negligence on the part of the carrier, it is not responsible.

4. WAREHOUSEMEN; *Liability; Negligence.* After the expiration of such reasonable time the carrier is responsible not as carrier, but only as warehouseman, and for ordinary negligence.

5. CONTRACT—*Changes Rule.* Where the carrier and shipper by special

contract stipulate for notice, without any limitations or conditions, the reasonable time for removal commences from the time of the notice, and not from that of the arrival of the goods.

6. ——— *Notice; Terms, and Construction of.* Where after a stipulation for notice, without any agreement as to the form or conditions thereof, the carrier gives notice, with a condition written thereunder that the liability of the carrier terminates upon the arrival of the goods, and the consignee receives such notices without objection, and continues his shipments over the road, *held,* that this was equivalent to a construction by the parties, and binding upon both, that the agreement for notice was simply for the accommodation of the consignee, and without extending the extraordinary liability of the carrier.

*Error from Montgomery District Court.*

THE opinion contains a full statement of the facts and questions in this case. *Maris,* as plaintiff, recovered judgment at the April Term 1874 of the district court against the *Railroad Company,* for $208.25, and costs, and the *Railroad Company* brings the case here on error.

*S. O. Thacher,* for plaintiff in error.

*L. F. Michenor,* and *J. D. McCue,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error to recover for goods destroyed by fire in a depot belonging to the plaintiff in error, and the question is, whether the company at the time of the fire occupied toward the goods the position of carrier, or that of warehouseman. The case was tried upon an agreed statement of facts. It is not contended that the fire was caused by the negligence of the company, or that if its liability as carrier had terminated it was responsible for the loss. The material facts are these: Maris was a merchant at Winfield, a place about ninety miles west of Independence, a point on the company's road. Goods were shipped to him over the company's road, to be delivered to him at Independence. The goods in question reached Independence on the 4th and

Statement of facts.

7th days of January 1872, and were placed in the depot building, and there remained eight days, (until the 15th of January,) and were then consumed by fire. Immediately after the arrival of each consignment of goods at Independence, notice thereof was forwarded by mail to Maris at Winfield, but did not reach him until the 20th of January, and after the fire. A tri-weekly mail ran between the two places. Ordinarily, only two days were occupied in transmitting the mail. During that month the epizooty was prevailing among the horses in that section of the country, and owing to that or some other cause over which neither party had any control, the notice did not reach Maris until the 20th. He called every day at the post office in Winfield for his mail. The only means of conveying goods from Independence to Winfield was by wagon, and under favorable circumstances the trip from Winfield to Independence took from three to five days, and the round trip six to ten days. By special agreement between the parties, notice was to be given Maris by mail of the arrival of the goods at Independence. The form of the notice given, (and Maris had prior to the 1st of January 1872 received similar notices of the arrival of other goods,) was as follows:

FREIGHT OFFICE, L. L. & G. R. R. LINE,
INDEPENDENCE, ———— 187—.

*M*———————:

There this day arrived at our depot at ————, consigned to you, the following articles:

| *No.* | *Articles.* | *No.* | *Articles.* |

EXHIBIT A.

*Weight,* ————    *Charges,* $————

which are ready for delivery to you on payment of freight and charges.

N. B.—No goods delivered until all the charges thereon are paid. Storage will be charged in all cases where goods are not removed within the prescribed time.

*The contract of this company as common carriers ends upon the arrival of goods at our depots,* and the company will not be responsible for damage from ordinary leakage, breakage, or insufficient cooperage; and no claims for damages will be

allowed after the goods leave the depot, unless by consent of the agent.

Goods will be delivered only to the owner, or his written order. A receipt for the goods will, in all cases, be required, and no claim will be entertained for goods lost after such receipt has been taken.          —————————, *Agent.*

Upon these facts some questions of importance are presented. It is insisted on behalf of the company, in the first place, "that a common carrier is relieved of its extraordinary liability as an insurer whenever it has carried the goods in-trusted to it safely, and deposited them in a safe warehouse." This question as to the period at which the carrier's extraordinary liability terminates, comes to us borne upon two opposing lines of decision. At the head of one line stands the case of the *Norway Plains Company v. B. & M. Rld. Co.*, 1 Gray, 263, in which the great jurist of Massachusetts, C. J. SHAW, holds that this liability of the carrier terminates when the goods are unloaded at their place of destination, and are ready for removal by the consignee; that if the latter be not present to receive them, and they are kept by the company in its depot or warehouse, its liability is that of a warehouseman. In other words, this liability continues only during the actual transit, and that when this is ended, if the consignee does not immediately receive them the company, as carrier, delivers them to the company as warehouseman, and thereafter the company is liable only for loss resulting from actual negligence. At the head of the other line is the case of *Moses v. B. & M. Rly. Co.*, 32 New Hamp. 523, in which the court decides that the carrier's liability continues after the termination of the actual transit, and until the consignee has a reasonable time to remove the goods; that, as the carrier's liability commences, not with the actual transit of the goods, but from the time of receipt from the consignor, so it continues until actual delivery to the consignee, or, what is equivalent to a delivery, until the consignee has had reasonable time after their arrival to inspect and take them away in the common course of business. The mere fact that either before or after the actual transit they

*1. Common carrier; liability, extent.*

are placed by the company in its depot or warehouse does not change the character of its liability. The following cases support the Massachusetts doctrine: *McCarty v. N. Y. & Erie Rld. Co.*, 30 Penn. St. 253; *Francis v. Dubuque & S. C. Rld. Co.*, 25 Iowa, 60; *Bauserman v. T. W. & W. Rly. Co.*, 25 Ind. 434; *C. & C. Air Line Rld. Co. v. McCool*, 26 Ind. 140; *C. & A. Rld. Co. v. Scott*, 42 Ill. 133. The other doctrine is adopted in the following cases: *Fenner v. B. & St. L. Rld. Co.*, 44 N.Y. 505; *Zum v. New Jersey St. Co.*, 49 N.Y., 442; *Wood v. Crocker*, 18 Wis. 345; *Derosia v. St. P. & W. Rld. Co.*, 18 Minn. 133; *Morris & Essex Rld. Co. v. Ayres*, 5 Dutch. 393; *Blumenthall v. Brainard*, 38 Vt. 413; *McMillan v. M. S. & N. J. Rld. Co.*, 16 Mich. 79; *Jeffersonville Rld. Co. v. Cleveland*, 2 Bush. 468; *Hilliard v. Wilmington & C. Rld. Co.*, 6 Jones, (Law) 343. The question is a new one in this state, and one of no small importance both to carriers and shippers. Notwithstanding there is a technical precision in the Massachusetts doctrine which makes it both capable of exact statement and easy of application, we think the other doctrine more just and reasonable in its application to the ordinary transactions of business, protecting both the shipper and the carrier. It extends a little the duration of the carrier's obligation, but only so far as seems necessary to protect the shipper. The goods remain in the custody of the carrier, and subject to his control. The exact moment of arrival can seldom be known to the consignee, even if he have notice of the shipment. It is unreasonable to compel him to remain at the depot of the carrier, waiting the arrival of the goods, or assume all the risks of the uncertainties in the delay of transportation and time of arrival. We therefore hold that the carrier's liability continues until the consignee has had a reasonable time to call for, examine, and remove the goods.

What is a reasonable time? This is not a time varying with the distance, convenience or necessities of the consignee, *2. What is reasonable time.* but it is such time as will enable one living in the vicinity of the place of delivery, in the ordinary course of business, and in the usual hours of business,

to inspect and remove the goods. It is well said by the court in the case from 18 Minn. 133, that, "What would be under the circumstances of the case, such reasonable time for the removal of the goods, is not to be measured by any peculiar circumstances in the condition or situation of the consignee, or plaintiff, which render it necessary for his convenience or accommodation that he should have longer time or better opportunity than if he resided in the vicinity of the depot, and was prepared with means and facilities of removing them; but what is meant by reasonable time is, such as would give a person residing in the vicinity of the place of delivery, informed of the usual course of business on the part of the company, a suitable opportunity, within the usual business hours, after the goods are ready for delivery, to come to the place of delivery, inspect the goods, and take them away." Tried by this rule, it is plain that the goods had remained in the depot at Independence more than a reasonable time for their inspection and removal. They should have been removed on the day of their arrival, or at the furtherest, during the business hours of the succeeding day.

It is insisted however, that notice was required of their arrival, and that no notice was received until after the destruction. Whether, independent of the special contract, any notice was requisite, may be doubted. The consignee did not

5. Notice to consignee; contract.

live at or near the place of delivery, and the authorities are conflicting upon the question whether notice is requisite even when the consignee lives at the place of delivery. See upon the question of notice *McDonald v. W. Rld. Co.*, 34 N. Y. 497; *Fenner v. Buffalo & St. L. Rld. Co.*, 44 N. Y. 505; *Price v. Powell*, 3 N. Y. 322; *C. & A. Rld. Co. v. Scott*, 42 Ill. 133; *Derosia v. St. P. & W. Rld. Co.*, 18 Minn. 133; *McMillan v. M. S. & N. J. Rld. Co.*, 16 Mich. 79; *Hilliard v. W. & C. Rld. Co.*, 6 Jones, (Law) 343. But whether notice independent of any special contract would have been requisite, need not be determined, for here the parties had stipulated for notice. And the question is, what effect did this notice have upon the company's liability? On

the one hand it is claimed that the reasonable time in which to remove the goods dates from the receipt of the notice, instead of the arrival of the goods; on the other, that the notice was purely a favor to the consignee, and that specifying the time at which the carrier's liability was to cease, it cannot be construed as enlarging that time. The question is one of difficulty. In those states where notice of the arrival of the goods is required to terminate the carrier's liability, it is held that the reasonable time for removal dates from the giving of the notice. This seems necessary to make the notice of any value, for if the reasonable time commences with the arrival of the goods it might often expire before the receipt of notice. It would almost invariably so expire if the consignee lived elsewhere than at the place of delivery. Hence, the notice would be meaningless, as affecting the rights and liabilities of either party. On the other hand, the form of notice used by the company, and of which Maris had infor-

6. Construction of notice; form, terms. mation by the receipt of such notices, attempts to limit the effect thereof, and plainly states that the company's liability as carrier is to terminate upon the arrival of the goods. Hence, Maris had knowledge that while the company had agreed to give and would give notice of the arrival, it did so only as a favor to him, and without extending the duration of its extraordinary liability. If Maris was unwilling to continue the shipment of goods under such conditions, he was at liberty to stop. Continuing, he accepts the conditions. To this it is replied that, contracting for notice without any stipulations as to the forms and conditions of notice, carries with it all the rights which flow from the mere fact of notice, and that the company cannot thereafter limit those rights by attaching conditions to that notice. This would doubtless be a satisfactory reply if this were the first consignment and the first notice. But having received notices with similar conditions, and making no objection thereto, or seeking a new arrangement, it seems to us that he cannot insist upon rights other than those given by the form of notice actually used. It must be borne in mind that

this is not an attempt by the company to restrict its liability, but an attempt by special contract to enlarge it; and before the company could be bound by such special contract it should be made clear that it had assented to it in full as claimed. It is not pretended that the company had ever given any notice otherwise than with the conditions attached to this; nor is it claimed the company would not be liable for any injuries resulting from its own negligence; so that its interpretation of its contract for notice, an interpretation accepted by Maris without objection, was that of an agreement to give information of the arrival of the goods without in the meantime assuming any additional liability. We are aware that the agreed statement shows that the first notice was only received Dec. 23d 1871, and that owing to the sickness of one party employed, as well as the prevalence of the epizooty, Maris failed to get a team to Independence before the destruction of all the goods of the various consignments by fire on January 15th 1872. But we fail to see anything which shows that Maris was unable to communicate by mail with the company, or to go himself, or send some one to Independence to make a new arrangement, or stop the shipment, or receive and store the goods. Under these facts, though with some doubts, we are constrained to hold that the company's liability as carrier had terminated before the fire, and that therefore it was not responsible for the destruction of the goods.

The case having been tried upon an agreed statement of facts, the judgment will be reversed, and the case remanded with instructions to enter judgment in favor of the plaintiff in error, defendant below.

All the Justices concurring.