HENRY BELL ET AL., Respondents, *v.* ST. LOUIS AND IRON MOUNTAIN RAILROAD COMPANY, Appellant.

### December 31, 1878.

1. A common carrier's liability does not terminate with the deposit of the goods at their destination, or with the delivery of them to a warehouseman, but continues for a time reasonably sufficient to enable a diligent consignee to examine and receive the goods.

2. "Reasonable time" is such as would enable one residing in the vicinity of the place of delivery, and who was informed of the probable time of the arrival of the goods and of the course of the carriers business, to inspect and remove the goods during business hours. When such time has elapsed, the carrier's liability becomes that of a warehouseman.

3. A common carrier does not discharge his obligation to keep the goods until reasonable time has elapsed for removal by the consignee by delivering them to a third person to keep before the reasonable time has passed.

4. The burden is on the carrier to show that his liability as such was discharged.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

THOROUGHMAN & WARREN, for appellant: The carrier's liability ceases when the goods are unloaded at their place of destination, and are ready for removal by the consignee. — Whart. on Neg., sects. 570, 571. If *after the arrival of the goods* the consignee has a reasonable opportunity to remove them, and does not do so, he cannot hold the carrier as an insurer. — *Fenner* v. *Railroad Co.*, 44 N. Y. 505; *Pelton* v. *Railroad Co.*, 54 N. Y. 214. "The rule in respect to notifying consignees of the arrival of goods does not apply to railroads where the goods are delivered on time. — *Rankin* v. *Railroad Co.*, 55 Mo. 171; *Railroad Co.* v. *Ayres*, 5 Dutch. 393; *Norway Co.* v. *Railroad Co.*, 1 Gray, 274.

J. M. & C. H. KRUM, for respondents: The common-carrier liability of a railroad does not terminate until a reasonable time has elapsed after the arrival of the goods at the place of destination to enable the consignee to come and remove them. During such time the railroad must hold the goods in its common-carrier capacity. — *Moses* v. *Railroad Co.*, 32 N. H. 523; *Wood* v. *Crocker*, 18 Wis. 345; *Railroad Co.* v. *Cleveland*, 2 Bush, 468; *Railroad Co.* v. *Maries*, 16 Kan. 333; *Blumenthal* v. *Brainard*, 38 Vt. 402; *Railroad Co.* v. *Ayres*, 5 Dutch. 393; *Railroad Co.* v. *Kidd*, 35 Ala. 209; *Railroad Co.* v. *Prewitt*, 46 Ala. 63, 67; *McMillan* v. *Railroad Co.*, 16 Mich. 79; *Graves* v. *Hartford, etc., Co.*, 38 Conn. 143; *Maignan* v. *Railroad Co.*, 24 La. An. 333; *Derosia* v. *Railroad Co.*, 18 Minn. 133. It being proved that goods were delivered to a common carrier, the burden of proof is on him to prove

delivery by him to the consignee, or to account for the goods. — *Reade* v. *Railroad Co.*, 60 Mo. 199; *Drew* v. *Red Line*, 3 Mo. App. 495; *Wolf* v. *American Express Co.*, 43 Mo. 421; *Levering* v. *Union, etc., Co.*, 42 Mo. 88; *Hill* v. *Sturgeon*, 28 Mo. 323.

HAYDEN, J., delivered the opinion of the court.

This is an action against the defendant as a common carrier, to recover the value of goods delivered to it for transportation to Birge, Nichols & Co., consignees at Fulton, Arkansas. The petition alleged a failure to deliver the goods. The answer alleged that the goods were duly transported to Fulton; that the consignees were not ready to receive them; that after search for the consignees, and waiting a reasonable time, the defendant caused the goods to be stored, for account of their owners, with warehousemen at Fulton, and that while in the warehouse the goods were destroyed by fire.

Upon the trial it appeared from the bill of lading that the defendant received the goods, being sheetings, etc., and agreed to transport them to Fulton and there deliver them to the consignee or connecting common carrier, the marks being, " *Via* Fulton: Birge, Nichols & Co., Jefferson, Texas;" that the goods left St. Louis on October 4, 1873, and arrived at Fulton after dark on October 7th. The defendant's agent at Fulton testified that, it being too late to handle the goods on that night, and the company having then no freight-house at that point, as the road had been completed there only a short time, the goods, after being kept in the cars upon the night of the 7th, were turned over to Lowry & McGee, who had a warehouse about seventy-five or one hundred feet from the road, and whose receipt for them was taken; that inquiry was made for the consignees, and that then the goods were stored, as had been the course of business there since the road had been in operation in case of non-resident owners. The

goods, it would appear, were placed in this warehouse on October 8th. On October 9th, before daylight, the warehouse accidentally took fire and was burnt, with every thing in it. The consignees did not live in Fulton, and had no agent there. The ordinary time employed in carrying goods from St. Louis to Fulton was four days; but sometimes, though not often, as many as six days were consumed. The jury found for the plaintiffs.

The defendant complains that erroneous instructions were given. The court below instructed the jury to the effect that though it might be customary with the defendant to store goods intended for transportation beyond Fulton, yet such custom could not relieve the defendant from the necessity of holding the goods for a reasonable time after their arrival, before storing them on account of the owners. The jury were also instructed to the effect that the fact that the consignees did not reside at Fulton, or were not there immediately upon the arrival of the goods to receive them, was not sufficient to excuse a non-delivery, or to authorize the defendant to at once store the goods; but that it was incumbent upon the defendant to show that it held them a reasonable time after their arrival (sufficient to lead a man of ordinary prudence to conclude that the consignees would not soon appear to receive the goods) before depositing them in the warehouse. The defendant asked the court to instruct to the effect that if the goods were carried safely to Fulton and stored in the warehouse, subject to the order of the consignees, on the morning of October 8, 1873; that the warehouse was safe, etc.; and that after the storage the consignees did not call within a reasonable time, and the goods were destroyed by fire, then the jury should find for the defendant. The court so modified this instruction as to require the defendant to have held the goods a reasonable time before storing them. The following instruction as to notice was given for the defendant: "The court further instructs the jury that it was the duty of the consignees to

take notice of the course of business of defendant at Ful ton at the time of the arrival of the train, when the goods might be expected there, and to be ready to receive them in a reasonable time after their arrival, and when, in such common course of business, they might fairly be expected to be ready for delivery; and the defendant was not bound to notify them of the arrival of the goods."

It has been a vexed question whether in cases like the present the responsibility of the carrier, as such, ends with the deposit of the goods at their point of destination, or whether the liability continues for a time reasonably suffi-cient to enable a diligent consignee to examine and receive the goods. The latter seems the rule best grounded in reason and public convenience. The duty of the carrier, it would seem, should correspond to the obligation of the consignee. There is no occasion to interpose the obligation of ware-houseman, if both carrier and consignee do their duty. If the liability of the carrier ends when the goods are un-loaded, then it must be that the consignee is bound to be present directly upon their arrival, no matter at what time of the night or day they arrive. But the contingencies attending upon the carrier's business, which make it often impossible for the consignee, be he ever so vigilant, to know when the goods will arrive, are incidents of the carrier's obligation, and, as between the two, ought not to impose an additional burden upon the consignee. Indeed, as it would not practically be contended that the consignee must, irre-spective of circumstances, present himself to inspect the goods at the moment of their deposit, or that he ought to wait indefinitely to meet the contingencies of transporta-tion, the question finally resolves itself into what time ought to be given to the consignee to inspect and remove the goods. And now, after much doubt, it may be considered sound doctrine that the liability of a railroad company as common carrier does not terminate with the deposit of the goods at the point of destination, in a proper place, or with

the delivery of them to a warehouseman, but that the extraordinary liability so far continues as to enable the consignee to have reasonable time and opportunity, after they are ready for delivery, to examine and remove the goods. *Pelton* v. *Railroad Co.*, 54 N. Y. 214; *Fenner* v. *Railroad Co.*, 44 N. Y. 505; *Moses* v. *Railroad Co.*, 32 N. H. 523; *Wood* v. *Crocker*, 18 Wis. 345; *Blumenthal* v. *Brainerd*, 38 Vt. 403; *Leavenworth R. Co.* v. *Maris*, 16 Kan. 333; *Ayres* v. *Railroad Co.*, 29 N. J. L. 393; *Jeffersonville R. Co.* v. *Cleveland*, 2 Bush, 468; *Alabama R. Co.* v. *Kidd*, 35 Ala. 209; *Graves* v. *Hartford, etc., Co.*, 38 Conn. 143; *Maignan* v. *Railroad Co.*, 24 La. An. 333; *Derosia* v. *Railroad Co.*, 18 Minn. 133. See *McMillan* v. *Railroad Co.*, 16 Mich. 79.

In considering what is reasonable time, however, even where this question is one for the jury, they are not to be governed by their own notions, but must find the fact in subordination to the rules of law. The extraordinary liability of the carrier is not to be unduly extended; and the obligation of the consignee is of a positive character, which is not affected to his advantage by his non-residence. The fact of his absence or non-residence does not relieve him from his duty, as the reasonable opportunity afforded him to remove the goods is not measured by his peculiar circumstances, but is such as would give to a person residing in the vicinity, and who had informed himself of the probable time of arrival of the goods, and of the course of business of the carrier, a reasonable time during business hours within which he could inspect and remove the goods. In the absence of an observance by the consignee of these obligations on his part, and after the reasonable time thus measured has elapsed, the liability of warehouseman commences.

In the present case, upon the supposition that the question of reasonable time was for the jury, the defendant might have asked more definite instructions than were given

as to what constituted such time. But we need not
stop here to inquire whether the explanation as to what
constituted reasonable time, contained in the parenthesis
above and given by the court, is correct, or would be gen-
erally applicable. Where the question as to reasonable
time depends upon facts in issue, it is for the jury, as has
been stated; but it may be purely a question of law. Here
that issue was put upon instructions most favorable to the
defendant, as here there is no conflict as to any material
fact upon which the question of reasonable time depended.

The evidence showed that the goods arrived after dark
on the 7th, and that during the night they were, with other
goods, locked in the car. On the next day, but at what
time of the day it does not appear, they were delivered to
the warehouseman. There was no evidence to show that
there was any reasonable opportunity for inspection or
removal before the goods were delivered to a third person.
The burden was on the defendant to prove that its obliga-
tion as carrier was discharged, and such reasonable oppor-
tunity given; and in the absence of such evidence, it cannot
contend that the delivery of the goods to a third person,
before such an opportunity was afforded, discharged its
obligation as a carrier. The defence, as the answer shows,
is, that after the expiration of a reasonable time, etc., the
goods were deposited for account of the owners, for safe-
keeping, with Lowry & McGee, who paid the freight and
charges. Thus, if the goods were burned in the ware-
house — and it is possible, upon the evidence, that the jury
have found to the contrary, and charged the defendant as
not having in any way accounted for non-delivery — they
were burned while in the possession of a third person, to
whom the defendant delivered them without authority, and
before its own duty as a carrier was discharged. It is said
that no one on the part of the consignees ever called for the
goods, and it is complained that the court's instructions
disregard this fact; that under the law as laid down, if a

railway company were to put goods in a warehouse imme-diately upon their arrival, it would be liable in case of loss, not because the consignee had not a reasonable time for removal, but because a reasonable time had not elapsed before the goods were put in the warehouse. But the phraseology of these instructions is used, not to express an abstract rule, but to fit the peculiar circumstances of the case. The carrier here undertook, it would appear, as soon as the goods were unladen, to deliver them to a stranger, — not to hold them itself, either as a carrier or a warehouse-man. The defendant's own evidence shows there was no reasonable opportunity for inspection or removal on the part of the owner. There was no obligation upon the con-signees to apply to the stranger, nor could the carrier so change the contract while its own obligation was undis-charged. Presumptively it was liable for the goods deliv-ered to it; and of the burden of showing performance, or a legal excuse for non-performance, it cannot relieve itself by urging that the consignees never called for the goods.

The defendant has no ground for complaining of any of the instructions; their fault is rather that, upon the evi-dence, they are too favorable for the defendant. The tes-timony is very slight, to say the least, to support some of the hypotheses put to the jury in its favor.

The judgment will be affirmed. All the judges concur.