HUBBARD, Respondent, v. MOBILE AND OHIO RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. COMMON CARRIERS: Conflict of Laws: Baggage. Where a passenger bought a ticket for passage on a railroad from a point in Illinois to a point in Missouri and received a check for her baggage, the contract for the carriage of such baggage was an Illinois contract and the Missouri statute, relating to connecting carriers, did not apply.

2. ———: ———: ———: Common Law. In the absence of proof as to what the law of Illinois was upon the subject, the common law must be taken as the law governing the transaction.

3. ———: **Connecting Carriers.** The American common law rule is that when a carrier receives goods for transportation to a destination beyond its own line, its liability terminates with delivery to the connecting carrier, unless it binds itself by express or implied contract for the whole distance; such contract may be deduced from the circumstances of the particular transaction

4. ———: ———: **Contract for Through Carriage.** Where a passenger bought a ticket at a station in Illinois for passage to the union station in the city of St. Louis, and received a check for her baggage to that point, the contract for the carriage of such baggage was a through one, and any other carrier who may have assisted in performing the contract was the agent of the contracting carrier.

5. ———: **Contract of Carriage: Baggage.** The contract of a carrier in such case made it responsible as a carrier of freight, that is, it was an insurer of the baggage against every loss except one due to the act of God or a public enemy.

6. ———: ———: ———: **Prima Facie Case.** Where a passenger, in an action against the railroad company for loss of baggage, showed that she had purchased a ticket at a station in Illinois for passage to the union station in the city of St. Louis, receiving a check to the latter point, for her trunk, which was delivered to the company in good condition, and the next day after 'he arrival in St. Louis, presented the check to the Terminal Company, a different corporation, and received the trunk, which had been broken open and the articles, for the value of which she sued, taken 'from it, she made out a prima facie case.

7. ———: ———: ———. A common carrier is not liable as an insurer of a passenger's baggage, except for such articles as properly come within that designation, where it is ignorant of the contents of the trunk or valise, unless by agreement it undertakes to carry articles not properly baggage, as such.

8. ———: ———: ———: **Jury Question.** In an action against a railroad company for the loss of baggage, whether the articles lost, consisting of opera glasses, jewelry, watches, diamonds, etc., were baggage or not, that is, articles of personal comfort, convenience and ornament usually taken on journeys, was properly left to the jury.

9. ———: ———: ———: **Instruction.** In an action for the loss of such articles, whether they were unsuited to the station and condition in life of the owner, and, therefore, not baggage within the common designation of the term, was for the defendant to show, and, if it desired a finding of the jury upon that issue, to ask an instruction embodying it.

Hubbard v. Railroad.

10. ———: ———: **Warehouseman.** A railroad company's liability, as a common carrier, with respect to baggage of passengers, does not terminate, and its liability as a warehouseman begin, until the passenger has had a reasonable time to take his baggage away from the station.

11. **PLEADING: Negligence: Common Carrier.** In an action charging a railroad company with the loss of baggage, as a common carrier, although the petition alleges that the loss was through the negligence of the defendant, it was not necessary for the plaintiff to prove negligence, because the gist of the action was the failure to deliver the articles safely at the end of the journey, according to the contract of carriage.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*R. P. & C. B. Williams* for appellant.

(1) In the absence of evidence locating the damage to goods in transit over several connecting lines, a prima facie presumption arises that the last carrier is the negligent one. Lin v. Railroad, 10 Mo. App. 125; Crouch v. Railroad, 42 Mo. App. 252; Flynn v. Railroad, 43 Mo. App. 424; Moore v. Railroad, 173 Mass. 335; Cate v. Railroad, 65 N. E. 400; Railway v. Coolridge, 83 S. W. 232; Railway v. Birdwell, 82 S. W. 835; Faison v. Railroad, 69 Miss. 569; Railroad v. Harris, 26 Fla. 148; Railroad v. Edloff, 34 S. W. 414; Railroad v. Brown, 37 S. W. 785; Laughlin v. Railroad, 28 Wis. 204; Smith v. Railroad, 43 Barb. 225; Strong v. Railroad, 86 N. Y. S. 911; Shriner v. Railroad, 41 N. Y. 620; Express Co. v. Hess, 53 Ala. 19; Hutchinson on Carriers, section 761; Railroad v. Jones, 100 Ala. 263; Railroad v. Culver, 75 Ala. 587; Railroad v. McIntosh, 73 Ga. 532; McCormick v. Railroad, 4 E. D. Smith 181; Willett v. Railroad, 45 S. E. (S. C.) 93; Beebe v. Railroad, 90 Minn. 36; Railroad v. Shanley (Tex.), 81 S. W. 1014; Bebb v. Railroad (Tex.), 84 S. W. 663; Railroad v. Culver, 75 Ala. 587. (2) Plaintiff having in her

amended petition specifically charged that the defendant was guilty of negligence in permitting her jewelry to be lost or stolen while in transit, was bound to make some proof of the specific charge, in order to make a prima facie case against this defendant. Milling Co. v. Transit Co., 122 Mo. 275, 26 S. W. 704; Read v. Railroad, 60 Mo. 199; Witting v. Railroad, 101 Mo. 631, 14 S. W. 743; Davis v. Railroad, 89 Mo. 340, 1 S. W. 327; Chitty v. Railroad, 148 Mo. 75, 49 S. W. 868; Waldier v. Railroad, 71 Mo. 514. (3) The amount and character of the articles contained in the trunk were so in excess of what is usually carried by ordinary passengers in their trunks, it became necessary as a part of plaintiff's case to show her financial condition, her social position, or her occupation, in order to be able to claim the value of the jewelry as baggage. Railroad v. Fraloff, 100 U. S. 24, 38 Central Law Journal, 5-6; 4 Elliott on Railroads, p. 2405; Dibble v. Brown, 56 Am. Dec. 460; Mauritz v. Railroad, 23 Fed. Rep. 765; Railroad v. Swift, 12 Wall. 272. (4) There being no evidence that the jewelry was lost, mislaid or stolen while in the possession of this defendant, and having delivered the trunk to the connecting carrier, which was deposited in its warehouse or baggage-room, and allowed by plaintiff to remain there for about twenty-four hours before being called for, this defendant could not be liable, and the Terminal Association would be liable, if at all, as a warehouseman and not as a common carrier. Gashweiler v. Railroad, 83 Mo. 112; Cohn v. Railroad, 59 Mo. App. 66; Ross v. Railroad, 9 Mo. App. 582; Hoeger v. Railroad, 63 Wis. 100; Railroad v. Mayhon, 8 Bush. 184; Jacobs v. Tutt, 33 Fed. 412; Lemon v. Chancellor, 68 Mo. 340; Lawson on Bailments, sec. 83, p. 141; Craig v. Childress, 14 Am. Dec. 751; Iron Works v. Hubburt, 158 N. Y. 34; Rankin v. Pacific Co., 55 Mo. 167; Holtzclaw v. Duff, 27 Mo. 524; Cramer v. Express Co., 56 Mo. 524; Eaton v. Railroad, 12 Mo. App. 386; Burdner v. Railroad, 13 Mo. App. 499; Transfer Co. v. Weiswanger, 18 Mo. App. 103;

Budy v. Railroad, 20 Mo. App. 206; Hartman v. Railroad, 39 Mo. App. 88; Pindel v. Railroad, 41 Mo. App. 84; Ringwait v. Railroad, 45 Neb. 760; Nealand v. Railroad, 161 Mass. 67; Aiken v. Westcott, 123 N. Y. 363; Kohn v. Railroad, 115 N. C. 638; Cuimit v. Henshaw, 35 Vt. 605.    (5)    After the trunk arrived at its destination, and was unloaded into the baggage-room or warehouse, the relations of the parties changed, and the liability alone of warehouseman took the place of that of a common carrier.  This defendant could in no event become liable to the plaintiff as a warehouseman, and such liability, if any existed, was against the Terminal Railroad Association alone.  Gashweiler v. Railroad, 83 Mo. 112.    (6)    The articles lost not falling within the category of ordinary personal baggage, the defendant would not be liable for their loss or damage unless gross negligence was shown, the plaintiff having failed to disclose the fact that the trunk contained such articles.  Saunders v. Railroad, 128 Fed. 15; Humphrey v. Perry, 148 U. S. 627; Vohmer v. Maxwell, 9 Humph. 622; Railroad v. Carrow, 73 Ill. 348.

*Karl Kimmel* and *Vital W. Garesche* for respondent.

(1)  Where a through contract is made by a common carrier for baggage, the carrier making the contract is liable for the whole route.  R. S. 1899, sec. 5222; Coal Co. v. Transit Co., 10 Mo. App. 596; McCann v. Eddy, 133 Mo. 59, 33 S. W. 71.  (2)  Common carriers of baggage and freight in this State are insurers, and direct proof of negligence is not material, even though alleged.  The proof by the plaintiff that the baggage in question, to-wit: one trunk, was delivered by the plaintiff to the Mobile and Ohio Railroad Company at Cairo in a good condition, under a through contract of carriage, and the further proof that said trunk was delivered to the plaintiff at St. Louis Union Station, the end of the tran-

sit with part of the contents of said trunk missing, made out a prima facie case of negligence against the Mobile and Ohio Railroad Company if negligence were required to be shown. Davis v. Railroad, 89 Mo. 340, 1 S. W. 327; Flynn v. Railroad, 43 Mo. App. 442; Witting v. Railroad, 101 Mo. 641, 14 S. W. 743; Halliday v. Railroad, 74 Mo. 162; Read v. Railroad, 60 Mo. 216. (3) The evidence showed that plaintiff was carrying the jewelry in question as part of her baggage. It was all her own property, and part of her necessary wearing apparel. From this evidence, from the plaintiff's general demeanor, and her appearance and conduct during the trial, the jury were justified in concluding that the jewelry lost was part of her necessary wearing apparel. She was entitled to carry such articles as she might wish to use during the journey, for her comfort or convenience. This was a question for the jury. McCormick v. Railroad (N. Y.), 4 Smith 181; Coward v. Railroad, 16 Lea (Tenn.) 225, 57 Am. Rep. 226; Carlson v. Nav. Co., 109 New York 359; Trust Co. v. Railroad, 39 Fed. Rep. 417; 3 Am. & Eng. Ency. of Law (2 Ed.), p. 535. (4) The liability of a common carrier of baggage or goods does not cease as such and it does not become a warehouseman until a reasonable time has elapsed after the receipt of the baggage at the point of destination for the passenger to call for the same. As to what is a reasonable time, is a question for the court. Bell v. Railroad, 6 Mo. App. 363; Lin v. Railroad, 10 Mo. App. 125; 3 Am. & Eng. Ency. of Law (2 Ed.), 564; Felton v. Railroad, 86 Mo. App. 332. (5) The carriage of a passenger's baggage is a mere incident to the carriage of the passenger, and a through contract as to the passenger will be a through contract as to the baggage. The purchase of a through ticket is all the evidence required to establish a through contract with the passenger and of his baggage. Felton v. Railroad, 86 Mo. App. 332; Ray on Negligence of Imposed Duties (Passenger Carriers), 589; Railroad v. Campbell, 36 Ohio St. 647; Railroad v.

Hubbard v. Railroad.

Weaver, 9 Lea 38; Croft v. Railroad, 1 McArthur 492; Wilson v. Railroad, 21 Gratt. 654; Hart v. Railroad, 8 N. Y. 37; Ward v. Railroad, 19 Wend. 534; Railroad v. Copeland, 24 Ill. 332. Candee v. Railroad, 21 Wis. 582; Mytton v. Railroad, 4 Hurl & N. 617; Hutchinson on Carriers (2d Ed.), sec. 715. (6) The acceptance of the goods or of the baggage by the carrier for the whole route renders such carrier liable to the end of the transit, even though it may terminate at a point beyond the end of such carrier's line. Railroad v. Copeland, 63 Ala. 219; Halliday v. Railroad, 74 Mo. 159; Dimmitt v. Railroad, 103 Mo. 433, 15 S. W. 761; Watkins v. Railroad, 44 Mo. App. 247. (7) It is competent for either of several connecting lines to contract with a passenger over its line for the transportation of himself and baggage over the whole distance, or that its liability should be confined to loss or damage occurring on its own road; but collection by one of the contracting carriers of fare in advance for the entire journey without limitation as to risk renders it liable on receipt of the baggage to transport it safely to the end of the route and to deliver it upon demand to the passenger. And a passenger traveling over connecting lines, who, upon arriving at his destination finds that his trunk has been broken open and robbed, may sue either the company issuing the baggage check or the one delivering the baggage in that condition. Wolff v. Railroad, 68 Ga. 653; Shewalter v. Railroad, 84 Mo. App. 597. (8) While it is true under the authorities that any connecting carrier may be held liable for damage occurring on his line, yet where a carrier making a through contract is sued, it is the duty of the court to hold the latter carrier alone responsible. Ry. v. Frankenburg, 54 Ill. 88; Ry. v. Merriman, 52 Ill. 123; Railroad v. Pontius, 19 Ohio 22; Coats v. Express Co., 45 Mo. 238; Barbor v. Wheeler, 29 N. H. 9; Hance v. Railroad, 56 Mo. App. 481; Eckles v. Railroad, 72 Mo. 308. (9) The Terminal Railroad Association, in making

delivery of the baggage at the end of the route, a through contract made by the Mobile and Ohio Railroad Company, being proven, acted only as the agent of the Mobile and Ohio Railroad Company, the initial carrier. And, therefore, the principal, the Mobile and Ohio Railroad Company, was alone liable where both companies were made defendants, to the suit, and where no evidence was introduced by either showing to whom the loss could be directly traced. Aiken v. Railroad, 80 Mo. App. 8.

STATEMENT.

The appellant in this case is the Mobile & Ohio Railroad Company, a corporation organized under the laws of the State of Alabama. The other defendant, the Terminal Railroad Association, is a corporation organized under the laws of the State of Missouri. On or about June 19, 1903, plaintiff became a first-class passenger on a train of the Mobile & Ohio Railroad Company at Cairo, Illinois, her destination being St. Louis, Missouri, to which point she paid her fare. She delivered her trunk to an employee of said railroad company at Cairo, Illinois, to be transported to St. Louis, and received from the employee a baggage check for the trunk. Plaintiff had packed in a leather box in her trunk these articles of jewelry:

"Opera glasses and stick in lavender plush bag, one gold watch and chain, one enamel watch and fleur-de-lis pin, set with pearls, one pair gold bracelets, ruby set in each, one odd bracelet, one set, gold breast-pin and earrings, one diamond setting in each, one gold breast-pin and ear-rings, containing five diamond settings, one gold crescent breast-pin set with pearls, one enameled four-leaf clover stick pin set with pearls, one handsome cameo ring, one turquoise ring, five stones, one opal ring, three stones, one emerald ring, one stone, one amethyst ring, one stone; one opal shirt stud."

Plaintiff reached the Union Station at St. Louis about seven-thirty p. m., June 19 and was met there by her brother, to whom she gave the check for her trunk. She went to her home at No. 4949 Fountain avenue that evening. The next morning her brother delivered the check to the Reliance Express Company and told that company to get plaintiff's trunk from the station and deliver it to her at her residence. The driver of one of the wagons of the express company called at the baggage department of the Union Station for the trunk, which was then in the custody of the Terminal Railroad Association, and on presentation of the check the trunk was delivered to him. The lock had been broken open and a rope tied around the trunk to keep the top on. The expressman refused to receive the trunk in that condition unless a notation was made by the agent of the Terminal Association showing that it had been broken open prior to the time it was turned over to the expressman. The trunk was taken from the Union Station about five o'clock Saturday afternoon and was delivered to the plaintiff the same evening in the condition it was in when the expressman received it. On looking over its contents plaintiff found the jewelry mentioned above had been abstracted. This action is to recover the value of the missing articles. No evidence was introduced by the defendants. That for the plaintiff goes to show the trunk was securely locked with the jewelry in question in it, when received and checked by the Mobile & Ohio Railroad Company at Cairo, Illinois. The testimony of the expressman was that the trunk had been opened before it was delivered to him and that whatever property was taken from it had been taken before then. Neither the ticket nor the baggage check issued to the plaintiff by the Mobile & Ohio Railroad Company was put in evidence, and all we know about the nature of her contract with said railroad company is that she paid her passage from Cairo to the Union Station in St. Louis and checked her trunk over the entire route.

The court instructed the jury, in effect, that if they believed plaintiff was a passenger from Cairo, Illinois, to St. Louis, riding on a first-class ticket which read from Cairo, Illinois, to the Union Station, St. Louis, Missouri, and plaintiff had delivered her trunk containing the articles in controversy to the Mobile & Ohio Railroad Company, at Cairo, Illinois, securely locked, and said railroad company accepted the trunk and contents as plaintiff's baggage, and the articles in controversy were being carried by plaintiff as part of her baggage and wearing apparel and for her personal use, and the trunk was delivered to plaintiff at the Union Station by the employees of the Mobile & Ohio Railroad Company within a reasonable time after its arrival, and that when the trunk was delivered to plaintiff the lock had been broken open and the articles enumerated stolen or lost in transit, the verdict should be for the plaintiff against the railroad company and the damages awarded should be the reasonable value of the articles as found from the evidence. The court refused a direction for a verdict in favor of the appellant, but granted that direction in favor of the Terminal Railroad Association. The appellant requested an instruction that if the jury found the plaintiff had delivered her trunk to appellant in good condition to be checked to St. Louis, and thereafter the said railroad company delivered it to the Terminal Association, the presumption is that the trunk was then in the same condition it was in when plaintiff delivered it to the Mobile & Ohio Company at Cairo, Illinois. This instruction was refused. The appellant also requested an instruction that if the jury believed the trunk was delivered to it at Cairo and was afterwards delivered by it (The Mobile & Ohio R. R.) to the terminal Railroad Association to deliver to the plaintiff, then before plaintiff can recover against said Mobile & Ohio Railroad Company she must show the damages occurred while the trunk was in its possession. Appellant excepted to the adverse rulings.

The jury returned a verdict in favor of the plaintiff for $750.

GOODE, J. (after stating the facts).—It is contended the court below erred in refusing to instruct that if the trunk and its contents were delivered to appellant in good condition at Cairo, and afterwards delivered by it to the Terminal Association, the presumption is the trunk and its contents were in the same condition at the time of the latter delivery as when received by appellant, and that plaintiff could not recover against appellant except on proof that the missing property was lost while the trunk was in appellant's possession. These theories rest on the assumption that appellant was liable only to the end of its line and relieved itself of further responsibility by delivering the trunk at that point to the Terminal Association. There is nothing to show when or where the trunk was turned over to the Terminal Association, or that it or any other carrier, except the appellant, had anything to do with its transportation from Cairo to Union Station at St. Louis. The fundamental fact on which an initial carrier, in some circumstances, may cast liability for lost freight on a succeeding one, is absent from this record. There is no evidence that the trunk was delivered to appellant to be transported over part of its journey by the appellant and over part by a connecting carrier. Nothing appears concerning the connection of the Terminal Association with the trunk except the bare fact that when the expressman called for it at the Union Station, he found it in the custody of the Terminal Association's employees and received it from them. For aught that is shown the trunk was carried the entire distance by the appellant; and, doubtless, this was true. The inference to be deduced from the evidence is that on its arrival at the Union Station on appellant's train, it passed into the custody of the Terminal Association pursuant to some business arrangement between the two defendants. Not only was the appellant

the carrier over the entire route, but its contract with the plaintiff was for through carriage. Its agreement was to carry her from Cairo, Illinois, to the Union Station, St. Louis, and as incident to this contract for personal carriage, to carry her baggage too. In support of their position that the appellant, as the contracting carrier, was responsible for the trunk and contents for the whole route, plaintiff's counsel invoke the Missouri statute which provides that if a common carrier receives property for transportation from one place to another, it shall be liable for the loss of the property, caused either by its own or some connecting carrier's negligence. [R. S. 1899, sec. 5222.] But the contract between plaintiff and the appellant was an Illinois one and governed by the law of that State; which we must take to be the common law, as there was no proof on the subject. [The Otis Co. v. R. R., 112 Mo. 622; Morrissey v. Wiggins Ferry Co., 47 Mo. 521; Goldsmith v. R. R., 12 Mo. App. 479.] The American common law is that when a carrier receives goods for transportation to a destination beyond the end of its line, its common law liability terminates with delivery of the property to the succeeding carrier for further transportation, unless it binds itself by an express or implied contract for the whole distance. Such a contract may be deduced from the circumstances of the particular transaction or from the usage of the carrier. [Coates v. Express Co., 45 Mo. 238; Snider v. Express Co., 63 Mo. 376.] No usage followed by appellant in its business, with regard to carrying beyond its line was shown. The entire evidence is that plaintiff was sold a ticket to the Union Station, St. Louis, her baggage checked to the same place, and, as far as appears, both she and it were deposited by appellant at that very destination. There is no proof, even, that appellant's line ends elsewhere. This state of facts justified the trial court in submitting to the jury the issue of whether the contract of carriage between plaintiff and appellant was a through one and would have justified a

direction to find it was a through one. If the appellant agreed to transport plaintiff and her property to destination, it was responsible throughout the journey, and any other carriers who may have assisted in performing the contract must be treated as appellant's agents. [Hutchinson, Carriers (2 Ed.), sec. 145 and citations; Halliday v. R. R., 74 Mo. 159; Shewalter v. R. R., 84 Mo. App. 589.] As to plaintiff's trunk and its contents, appellant was under the responsibility of a carrier of freight; was an insurer against every loss except one due to the act of God or the public enemy, no special restriction of liability having been shown. [Aiken v. R. R., 80 Mo. App. 8.] As the initial and contracting carrier, appellant remained responsible for the loss of the property at any point of the transit. In the absence of a special agreement, confining appellant's responsibility to part of the journey, its contract necessarily imposed responsibility on it for the entire journey. Now it is certain from the evidence that the trunk was received by the appellant at Cairo, Illinois, in good condition, and that the articles of jewelry plaintiff had packed in it were gone when it was restored to her at destination. Proof of these facts made a prima facie case in her favor. [Davis v. R. R., 89 Mo. 340, 1 S. W. 327.] The position is wholly untenable that showing the trunk was received from the Terminal Association at destination had a tendency to overcome the prima facie case; for such proof failed totally to establish performance by appellant of its agreement for through carriage. What the appellant was bound to prove to exonerate itself from liability, was that the trunk was lost through the act of God or the public enemy, or that by virtue of its contract with the plaintiff, its responsibility terminated and some one else's began at an intermediate point on the route. No evidence was offered in support of either of these exceptions to liability. It may be the trunk was carried over part of the route by the Terminal Association and that carriage by the Association was contemplated from the

first.  If so, the presumption might arise, in an action to recover the value of the lost contents from the Association that the trunk was delivered to it by appellant in good order.  That proposition is not in this case.  It is apparent that the articles in controversy were lost either by theft or negligence, while appellant was responsible for them, and it must answer to the plaintiff for their value.

A carrier is responsible as an insurer of a passenger's baggage; but only to the extent that the property shipped as baggage comes within that designation. We mean in the absence of a particular agreement; for a carrier may undertake, if it pleases, to carry anything as baggage.  But when there is no special undertaking and the carrier is ignorant of the contents of a trunk or valise, its common law liability will embrace none of the contents that is not baggage in a technical sense.  Now, it is contended by the appellant that the property in controversy was not baggage, and, therefore, it is liable, not as an insurer, but only for negligence.  The court, by a sound instruction, left it to the jury to decide whether the articles were baggage or not.  The plaintiff swore they were articles of personal apparel which she was in the habit of wearing and carried for that purpose. It will be seen at a glance that they were things appropriate to the apparel of a woman, as all of them were pieces of jewelry such as are commonly worn on the person for use or ornament.  There were two watches, it is true; but one of them was a black gun metal watch which plaintiff wore while in mourning.  We might almost pronounce the articles to be baggage as a matter of law; for plainly they were personal apparel.  [Hutchinson, Carriers, sec. 682.]  The point of criticism in this connection is that no evidence was adduced to show plaintiff's social station, though the question of what may be considered as the baggage of a traveler depends, in some measure, on his condition in life.  That is to say, if he is a person of opulence and fashion, many articles

Hubbard v. Railroad.

might be found to have been carried by him as baggage, which would not be if contained in the trunk of a person of no fortune and humble life. This point was matter of defense and no testimony bearing on it was given, or any instruction asked. The jury had an opportunity to observe the dress and appearance of the plaintiff and form some notion of her social station and manner of attiring herself. But this particular phase of the question was one for the defendant to request advice to the jury on, if it desired a finding of whether the lost articles were suitable to one of plaintiff's station and means. The defect in the instructions was, at most, a case of non-direction. Of course, the law does not undertake to fix cast-iron regulations as to just what jewelry or articles of personal adornment an individual of given wealth or rank may carry as baggage. People have different tastes about such things. A very wealthy person might choose to wear no jewelry; whereas a poorer one might have a taste for precious articles and fine clothes and gratify it. Still, the law receives testimony touching the wealth and social rank of plaintiffs in actions like this, as one means of enlightening the jury in regard to whether the lost property should be considered baggage or not. For things may be in a trunk or valise when checked by a traveler, which the law will refuse to treat as such. Generally speaking nothing is baggage which a traveler is entitled to have transported by a carrier as an incident of the contract to carry him, except those articles of personal comfort, convenience and ornament usually taken on journeys and visits. The term "baggage" is ambiguous and the preceding remarks suggest rather than define, its meaning. Baggage does not, as a rule, include merchandise or furniture. To some extent the question of whether in a given case, a certain article was baggage will depend, not only on the condition in life of the traveler, but on the purpose of the journey. We have sufficiently stated, for present purposes, the significance of the term in law. If

property is shipped as baggage which should not be, the carrier is liable for its loss only on the score of negligence, unless it was informed what the property was and consented to carry it as baggage. We rule the point against the appellant that the judgment must be reversed because of lack of evidence to show plaintiff's social degree or fortune and that the lost property was suited to her circumstances. This ruling is called for both by appellant's failure to raise the point below, and because the nature of the property, in connection with plaintiff's testimony, justified the conclusion that it was for personal use.

It is said the plaintiff failed to call for her trunk within a reasonable time and thereafter the responsibility of the appellant ceased; that the trunk was turned over to the Terminal Association at the Union Station, which then became liable as a warehouseman for its safekeeping. It might be answered that no defense was set up based on delay of the plaintiff in taking her trunk from the station; nor was an instruction asked on that theory. The plaintiff established her prima facie right to a verdict by proving delivery of the trunk to the Mobile & Ohio Railroad Company at Cairo, pursuant to a through contract of carriage, and that some of the contents were gone when it was redelivered to her. It then devolved on the defendant to excuse itself. If it wished to do so by showing that its responsibility as a common carrier had ceased by delivery to a warehouseman before the loss occurred, it ought to have introduced some evidence on the subject. It did not. For aught we know, the trunk may have been in the custody of the appellant until the moment before it was received by the expressman. In fact we know nothing about when it arrived in St. Louis except that it was at the station when the expressman called for it. In any contingency, the appellant was responsible for the goods until they were delivered to plaintiff or her agent. Until then appellant continued liable, either as carrier or warehouseman, and the essen-

tial difference would be as to the degree of responsibility. As a warehouseman it would be answerable only in case the property was lost or damaged by want of care on its part. The status of warehouseman sets in and that of carrier ceases, when the owner has had a reasonable time in which to take the property away, after it has reached destination and been unloaded from the vehicle it was carried on. [Bell v. R. R., 6 Mo. App. 363; Gashweiler v. R. R., 83 Mo. 122.] But what proof was there that the trunk and its contents were in good order when unloaded from appellant's car? None. If appellant had shown they were in good condition, we would listen to the argument that it was liable only as a warehouseman for their subsequent loss and that negligence on its part must be proved. This point is really one of the burden of proof, and the question is, was the plaintiff bound, in order to recover against appellant as a carrier, to show the property was lost before it was unloaded at the station and she had had a reasonable opportunity to remove it; or was the appellant bound to show that when its liability declined to that of a warehouseman, the property was still intact? We hold the burden in that regard was on the appellant, and that if it wished to shift its character from that of carrier into that of warehouseman, it was bound to prove it had acquitted itself fully as carrier, by unloading the property at the station in good order and keeping it a reasonable time subject to plaintiff's orders. An exact precedent to support this proposition exists. [Bell v. R. R., 6 Mo. App. 363, 369.] We reject entirely the argument that appellant ceased to be responsible in any capacity, and the Terminal Association became responsible as warehouseman, when the goods were delivered at St. Louis. The evidence before us is inadequate to support such a theory; for it shows nothing about how the Terminal Association happened to have the trunk in its custody.

The further contention is that plaintiff was bound to prove the appellant was guilty of some negligence which

caused the loss. This argument is founded on an expression in the petition that the articles were lost by the negligence of the employees of the two defendants. That statement is not the gist of the petition. The entire gravamen of the case is that the trunk was delivered to and accepted by the appellant for carriage, with the lost articles in it, and afterwards returned to the plaintiff without them. The action is not really one for negligence, but on the liability of the appellant as a common carrier. The judgment is affirmed. All concur.