JAMES N. BURNES, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 11, 1912.

1. **DAMAGES: Lost Baggage: Railroads.** Where the facts and circumstances show that a railroad company accepted a passenger's baggage for transportation within the meaning of that term as used in the statutes, Sec. 3138, R. S. 1909, it is liable for the loss of such baggage if destroyed by fire while enroute.

2. ———: ———: **Connecting Carrier.** In the absence of the issuance of a ticket or any other written contract, a passenger on a railroad may assume that no special limitations were

intended to be placed on the common law liability of the railroad, and where the circumstances of the transaction proclaim an implied promise for through transportation, the carrier is liable for loss of baggage occurring on a connecting line.

3. ————: **Husband and Wife: Baggage.** Where a husband is in possession of and delivers baggage to a railroad company and paid for the carriage of both himself and wife, the carrier is under obligation to return it to him, and he may maintain an action for its loss.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk,* Judge.

AFFIRMED.

*John E. Dolman* for appellant.

The court should have directed a verdict for the defendant. First, because there was an entire failure of proof to support the allegations of the petition and to support the theory of the plaintiff that an oral contract for a continuous carriage was made with the defendant. He is bound by the theory adopted by him and cannot recover upon any other. This is the settled law of this state. Hill v. Meyer Bros. Co., 140 Mo. 433; Brick Co. v. Railroad, 213 Mo. 715; Marr v. Zeidler, 145 Mo. App. 199; Atterbury & Nichols v. Hopkins, 122 Mo. App. 172; James v. Casualty Co., 113 Mo. App. 622. In case of special tickets over connecting lines the very terms of which imply an assent, which it is required shall be given by signature, the failure to sign will not relieve the purchaser who accepts and uses the ticket, from the limitations or conditions contained therein. Rahilly v. Railroad, 66 Minn. 153, 68 N. W. 853; St. Clair v. Railroad, 77 Miss. 789, 28 So. 957; Boering v. Railroad, 193 U. S. 442, citing many authorities; Harmon v. Jensen, 176 Fed. 519-523. And the fact that he did not read the ticket and did not know its conditions, or the fact that he left it with another to avoid the inconvenience of pre-

senting it to the various conductors along the line of the route, will not relieve him of the limitations therein contained. Boling v. Railroad, 189 Mo. 219; Boylan v. Railroad, 132 U. S. 146-150; Boering v. Railroad, supra. In order for plaintiff to recover for loss of his wife's personal baggage he should have procured and proved her written assignment of her cause of action to him. Rossier v. Railroad, 115 Mo. App. 515. That the various articles of wearing apparel and ornaments testified to by the plaintiff as belonging to his wife were her separate personal property within the meaning of the section of the statute above cited cannot be questioned. Whiton v. Snyder, 88 N. Y. 299. The defendant did not "take plaintiff's trunk for transportation" and issue him a check therefor, as provided in Section 3138, Rev. Stat. of Mo., 1909, in the sense that ordinary baggage is taken. Mitchell v. Railroad, 116 Mo. App. 116; Hasbrouck v. Railroad, 137 Mo. App. Div. 532, 122 N. Y. Sup. 123. But furnished him a car in which he could take his trunk and have it carried under his own supervision and control. It is only where the carrier takes exclusive possession of baggage that it is liable as an insurer therefor. 3 Am. and Eng. Ency. of Law, 547-549, and cases cited; The Humbolt, 97 Fed. 656. If the plaintiff had possession of his baggage either by himself or his agent, defendant in the absence of any proof of negligence on its part is not liable for its loss. Burnes v. Railroad, 144 Mo. App. 71; Root v. Sleeping Car Co., 28 Mo. App. 199; Efron v. Car Co., 59 Mo. App. 641; 3 Am. and Eng. Ency. of Law, 547. Whether plaintiff or defendant had possession of the baggage was a question for the jury if the evidence thereof was conflicting. Burnes v. Railroad, supra.

*C. C. Crow* for respondent.

(1) The jury found from the evidence in this case that respondent paid for a through passage from

St. Joseph, Missouri, to Mexico City and return for himself and wife, with baggage, and this question of fact is foreclosed as far as this court is concerned. Burnes v. Railroad, 144 App. 71. Cases cited by appellant. (2) Respondent was entitled to recover for the loss of baggage for himself and wife for three reasons: First, he was the owner of the baggage carried by Mrs. Burnes, furnished by him as the necessaries of life. It was his duty under the law in providing his wife with the necessities of life, to replace the lost property. Second, he was bailee of the baggage and delivered same to appellant company as such bailee. Third, appellant company cannot dispute the title of respondent to the property delivered to it by him, as he was the only person with whom appellant had contractual relations. Elliott on Railroads, vol. 4, sec. 1660; Curtis & Del. Lock & Railroad Co., 74 N. Y. 116; Richardson v. Railroad, 2 L. R. A. 716; Witey v. Railroad, 141 Mich. 412, 104 N. W. 773.

JOHNSON, J.—This action was before us on a former appeal and the judgment, which was for defendant, was reversed and the cause remanded on account of error in the instructions. [144 Mo. App. 71.] A second trial resulted in a verdict and judgment for plaintiff and the cause now is before us on the appeal of defendant.

The action is to recover damages for lost baggage belonging to plaintiff and his wife. The petition alleges "that on or about the first day of January, 1908, plaintiff and his wife became passengers at St. Joseph, Missouri, on one of defendant's railway trains to be carried from St. Joseph, Missouri, to Mexico and return, same being a continuous passage." That plaintiff "carried baggage for himself and family as such passenger," that "defendant was to carry himself and wife and baggage from St. Joseph, that the baggage

delivered to defendant consisted of wearing apparel
and other personal belongings of plaintiff and his wife
and that "defendant has failed and refused and does
now refuse to deliver said baggage or any part there-
of to plaintiff, although the time for delivery has long
since passed, the time for delivery being February
25, 1908."

The answer in addition to a general denial con-
tains averments to the effect that the carriage of
plaintiff and his wife from St. Joseph to the city of
Mexico and return, was performed by defendant and
its connecting carriers under the terms and conditions
of certain special tickets sold and delivered by de-
fendant to plaintiff and his wife in consideration of a
reduced rate then lawfully in force, and that among
the conditions of said special contracts was one pro-
viding, "that in selling said ticket and in checking
baggage thereon the defendant should not be respon-
sible beyond its own line and that baggage liability
thereon was limited to wearing apparel not to exceed
one hundred dollars in value."

Further it is alleged in the answer that plaintiff
and his wife were members of a party of excursionists
and that neither defendant nor any of its connecting
carriers had possession or control of the baggage car-
ried by the excursionists.

The material facts of the case thus may be stated.
A secret order known as "Nobles of the Mystic
Shrine," organized an excursion from St. Joseph to
the city of Mexico in the republic of that name and in-
vited others than members of the order to go on the
excursion. The persons in charge of the arrangements
selected a railroad route of which defendant's line
from St. Joseph to Dallas, Texas, was a part and en-
tered into an agreement with defendant's city passen-
ger agent at St. Joseph for a special train consisting
of Standard Pullman cars and a dining car to carry
the excursionists to Mexico and back to St. Joseph.

An excursion rate of forty-five dollars for the round trip was offered by defendant and advertised in newspapers and circulars. The passenger agent who was not a "Shriner" was added to the committee on arrangements and prepared the advertisements which, among other things, stated that, "A special baggage car is attached to the train with our own baggage master in charge. Access to the baggage car may be had any time during the day . . . the cost of the trip as given below includes all direct expenses on the train, first-class ticket transportation to the city of Mexico and return . . . Standard Pullman sleeping car and all meals in dining car while enroute. . . This is not, so to state, a personally conducted excursion. True, the manager will be along with competent conductors and escorts." An effort was made by defendant to prove that defendant's passenger agent who was the "manager" above referred to and who made the trip with the excursionists was not acting as the agent of defendant but as a member of the "Shriner's Committee" but the inference from all the evidence is permissible that he acted in all these matters as the agent of defendant and within the scope of his agency. The jury were entitled to the belief that defendant, by its agent, undertook and agreed to provide a special train for the use of the excursionists, to place that train in charge of its own special agent and to run it over its own line and the lines of its connecting carriers. The testimony of the passenger agent (who was introduced as a witness by defendant) relating to an occurrence on the outbound trip, gives emphasis to this view. When the train arrived at Dallas, the terminus of defendant's line, the baggage car provided by defendant was found to have a defective wheel or axle. From Dallas on to the Mexican borders the route was over the line of the Missouri, Kansas & Texas Railroad Company and that company provided another baggage car for the train. The agent

testified that this act was purely one of courtesy and that the connecting carrier was under no contractual or other duty to defendant to furnish new equipment for the special train in case of a breakdown. We quote from his testimony: "Q. Now you don't know how you got hold of this other car, do you? A. No, sir. Q. Not a thing about it? A. I thought it was very courteous of someone. Q. You could not have carried out the terms of your agreement that you had made for the Rock Island Railroad Company without getting a new car, could you, Mr. Goodrich? A. Not without delay to the party in Dallas." . . .

"Q. So that when you started from St. Joseph to Mexico City and return, you intended that if there was any breakdown or loss of equipment, that you would send back to St. Joseph for the car, and the parties would wait down there in one of the Mexican swamps until you sent back to St. Joseph for a car, is that it? A. Not unless we could have gotten the cars of the other railroads as happened to be the case in this instance, at Dallas. Q. How did you get it? A. Fortunately the M., K. & T. had a baggage car on hand. Q. Who did they furnish it to? A. They furnished it to the Shrine party. Q. They furnished it to the Rock Island and Pacific Company didn't they? A. No, sir. Q. They did not? A. Not directly speaking. Q. To whom did they furnish it? A. They provided it for the proper handling of our party, the Shrine party. Q. Wasn't that furnishing it for the Rock Island & Pacific Railroad Company? A. I can't say that it was. Q. To whom did they furnish it and deliver it? A. In order to care for the business, why the Rock Island switched to them at Dallas. Q. Why I thought you had no arrangement with them to do that? A. The arrangement was to operate the baggage car and sleeper. The Rock Island baggage car and sleeper, that was the arrangement."

From this and other evidence in the record it is clear that the arrangement between defendant and its connecting carriers contemplated that the latter carriers should provide locomotives and train crews for taking the special train over their respective lines and should receive proportionate shares of the fares collected from the excursionists as compensation for their services, but that the train itself was defendant's train, in the immediate charge of its own agent.

Before the excursion left St. Joseph, the proposal to include a dining car in the equipment of the train was withdrawn on account of insufficient patronage and the train as finally constituted consisted of a baggage car and two Pullman sleeping cars. One end of the baggage car was used for baggage and the other end was fitted in a crude way for the cooking and service of meals to the passengers. Supplies were purchased by the "Arrangements Committee" of the Shriners. A gasoline cooking stove was installed and a negro cook hired. Defendant did not bear any of this expense and did not pay the cook who depended for his reward on tips from the passengers. Defendant did not have a baggageman in the car and did not issue baggage checks. The cook was the only person whose duty required him to be in the car all the time and passengers were given free access to their baggage at all times during the day. On the return trip the gasoline stove exploded at a place on the Missouri, Kansas & Texas line and set fire to the car which with all its contents was completely destroyed. Plaintiff lost his trunk and its contents which consisted of his own and his wife's personal baggage.

Plaintiff who was not a "Shriner" arranged for his transportation with defendant's passenger agent who told him about the excursion and gave him the advertising circular from which we have quoted. Plaintiff says he did not read the circular and his testimony is to the effect that all he knew about the

excursion was that defendant proposed to provide a special train and that it offered a reduced rate of forty-five dollars for the round trip. He paid the passenger agent for two adult passengers and was given nothing but a tag to put on his baggage. Nothing was said about tickets or contracts, special or otherwise. It appears that the agent made out special tickets for the passengers but did not deliver them. He kept all of the tickets in his own possession and presented them to the different conductors. Plaintiff knew after the journey had begun that the agent had a number of tickets but did not see the one made out in his name until the first trial of the case. On the return trip Mrs. Burnes, desiring to stop off at Dallas, was given her ticket at Mexico City where all the tickets, by their terms, were required to be validated, but plaintiff did not examine her ticket and, as stated, had no knowledge of the conditions of these so-called special contracts until after the loss had occurred.

The court overruled the demurrer to the evidence offered by defendant and at the request of plaintiff gave the following instructions:

(2) "The court instructs the jury that if you believe from the evidence in this case that plaintiff and his wife became passengers for hire on one of defendant's trains on or about the 7th day of January, 1908, and that defendant agreed unconditionally to transport plaintiff and his wife from St. Joseph, Missouri, to the city of Mexico and return; and you further believe from the evidence in the case that plaintiff took along baggage for himself and wife for said trip; that said baggage was accepted for carriage by defendant to be carried by it in a baggage car from St. Joseph to the city of Mexico and return, and that the time for delivering said baggage at St. Joseph, Missouri, in accordance with the terms of the agreement to carry plaintiff and his wife has expired, and that defendant has failed and refused to deliver said

baggage to plaintiff at St. Joseph, Missouri, then the verdict in this case will be for plaintiff, unless you find the facts to be true stated in instruction No. 4.

(3) "The court instructs the jury that if you believe from the evidence that plaintiff and his wife became passengers for hire on one of defendant's trains, to be carried to the city of Mexico and return, then you are instructed that it was the duty of defendant to accept the baggage of plaintiff and his wife and carry same safely from St. Joseph to Mexico and return, and furnish such persons and cars as became necessary to carry said baggage safely, unless you believe the facts stated in instruction No. 4.

(4) "The court instructs the jury that one of the defenses of defendant in this case is that plaintiff was in the sole charge of the baggage of himself and wife, or by himself or through others, employed Essex Allen to have charge and control of the baggage of plaintiff and his wife, and you are instructed that before you can find for defendant on this issue, defendant must prove to your reasonable satisfaction by a preponderance of all the evidence in the case, that plaintiff was in the sole charge and control of the baggage, himself and wife, himself, or by Essex Allen, employed by himself or others, acting for him, by his authority."

The principal contention of defendant is that the court erred in refusing to direct a verdict in its favor. It is argued first, that plaintiff and his baggage were carried pursuant to the contract expressed in the special tickets which expressly limited the baggage liability of defendant to losses occurring on its own line and, second, that we should hold as a matter of law that the negro cook was the agent of plaintiff in charge of this baggage and, therefore, that defendant, never having taken possession of the property or assumed control over it, should not be held accountable for its

accidental loss in transit. We shall consider this last proposition first.

We think the facts and circumstances in proof show beyond dispute that defendant accepted plaintiff's baggage for transportation within the meaning of that term as used in the statutes, section 3138, Revised Statutes 1909, and that if plaintiff had demanded a baggage check defendant would have been bound to issue it. Defendant provided a baggage car, advertised that its own baggage master would be in charge of the car and of the baggage of the passengers, received plaintiff's baggage in the car thus provided and sent a special agent to take charge of the train of which this car was a part. The fact that passengers were allowed access to their trunks in the daytime was a mere privilege accorded them and is not inconsistent with the view that defendant had undertaken to transport the baggage as an insurer. Nor can defendant be allowed to avoid liability on the ground that the negro *factotum* who, among his manifold duties, looked after the baggage in the car, was not the servant of the defendant but of the passengers. He was an agency employed by the passenger agent in the performance of one of the duties defendant had assumed towards its passengers. In the discharge of such duties, he was the servant, the instrument of defendant, notwithstanding he may have been employed by the "Shriners" as a cook and general servant.

Passing to the first proposition we think the evidence supports the allegation of the petition that defendant undertook and agreed to carry plaintiff and his baggage to the city of Mexico and return and that the contract under which the transportation was accomplished did not restrict defendant's liability for baggage to a loss occurring on its own line. A contract for the transportation of baggage is an incident to that for the carriage of the passenger. [Griffith v. Railway, 114 Mo. App. l. c. 596; Felton v. Railway, 86

Mo. App. l. c. 335; Hubbard v. Railroad, 112 Mo. App. 459.]

A rule that has received the sanction of our Supreme Court is that stated in the following quotation from Elliott on Railroads, volume 4, section 1596: "There is some conflict among the authorities upon the subject of through tickets over several different roads, but the rule which is supported both by the better reason and by the weight of authority is that even when the ticket does not expressly provide that the first company is acting for the other companies merely as their agent in selling it, the rights of the passenger and the duties and responsibilities of the different companies are substantially the same as if the ticket had been purchased at the office of each company separately, unless there is something in the contract making the first company responsible beyond its own line. [Boling v. Railroad, 189 Mo. l. c. 239.]

But where the contract for transportation discloses an agreement of the initial carrier for through transportation, i. e., that such carrier purposes to act not as the mere agent of the connecting carriers in contracting for transportation over their lines but as the employer of such connecting carriers as agencies in the performance of the contract, its liability is that of carrier for the whole transportation regardless of whether the loss or injury occurred on its own line or the line of one of the connecting carriers. And the existence of such through contract may be implied from the circumstances of the particular case or from the usage of the carrier. [Hubbard v. Railroad, supra; Grover v. Railway, 70 Mo. l. c. 674.]

What was the contract in the present case? Certainly it was not evidenced by the special tickets offered in evidence. There was no delivery of the ticket to plaintiff and he signed no such special contract, nor did he know that defendant in accepting payment of the fares demanded for through transportation pro-

posed to limit its liability to its own road. Certainly plaintiff cannot be held bound by a contract to which he gave neither express nor implied consent and of the terms of which he was ignorant. True he must be held to have known that the fare he paid was on the basis of a reduced rate and that in such case a ticket issued to him would be regarded as the contract for transportation and not as a mere token or evidence of a contract. [Truel v. Railway, 143 Mo. App. l. c. 386, and cases cited.] But in the absence of the issuance of a ticket or any other written contract plaintiff was entitled to assume that no special limitations were intended to be placed on defendant's common law liability. The circumstances of the transaction proclaimed an implied promise for through transportation and defendant is liable for the loss of baggage occurring on the connecting line. The demurrer to the evidence was properly overruled.

The evidence disclosed that a part—the greater part—of the baggage contained in the trunk was wearing apparel for plaintiff's wife and upon that defendant insists that he cannot recover for such part. We think he can. He was in possession of and delivered the baggage to the defendant and paid for the carriage of both himself and wife, and defendant was under the carrier's obligation to return it to him. He stated that her apparel had been bought by him for her and that it was a part of her necessities suitable to her station in life, which he considered himself bound to supply. Calling attention to the fact that this is not a case between husband and wife, or between the wife and the husband's creditors, as to rights of property of married women, we are of the opinion that the husband can rightfully maintain the action. [Curtis v. Railway, 74 N. Y. 116; Withey v. Railroad, 141 Mich. 412, 104 N. W. 773; Richardson v. Railway, 85 Ala. 559, 5 So. 308; 4 Elliott on Railroads, section

1660.] What we have written disposes of the objections to the instructions. The case was properly tried and the judgment is affirmed. All concur.